Richard MAHAN and Felicia Mahan,
Plaintiffs, Appellants,

v.

PLYMOUTH COUNTY HOUSE
OF CORRECTIONS, et al.,
Defendants, Appellees.

No. 94–1835.

United States Court of Appeals,
First Circuit.

Heard Feb. 8, 1995.

Decided Sept. 7, 1995.

Matthew Cobb, with whom Law Firm of Matthew Cobb was on brief, for appellants.

James B. Lampke, for appellee Town of Hull.

Matthew J. Buckley, with whom Law Office of Matthew J. Buckley was on brief, for appellee Walter Bouchie.

Steven M. Walsh, for appellee Plymouth County Sheriff's Dept.

CYR, Circuit Judge, BOWNES, Senior Circuit Judge, and BOUDIN, Circuit Judge.

CYR, Circuit Judge.

On November 14, 1989, Walter Bouchie, a detective with the Town of Hull Police Department ("Hull Police Department"), executed a valid arrest warrant against plaintiff-appellant Richard Mahan ("Mahan") for the rape of Sheila Commesso.[1] The arrest took place in Mahan's hatchback automobile. Bouchie and other officers searched the hatchback incident to the arrest and damaged a cord over the hatch area and a pocket tape recorder in the car.

Following the arrest, Mahan was taken to the Hull Police Station for "booking." Once the "booking" had been completed, Bouchie began interrogating Mahan without giving *Miranda* warnings. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Mahan asked if he had the right to speak with an attorney. Bouchie informed him that an attorney would be appointed at arraignment. Mahan asserted a right to remain silent until an attorney was present. Bouchie then said, "[Y]ou are going to talk to me or I will lock you up in that cell down there, and you won't get out." When Mahan would not relent, he was placed in the holding cell. No further questioning occurred.

Within hours of the arrest, a representative of the Hull Police Department was sent to Mahan's home to pick up a bottle of medicine—Tegretol—which had been prescribed in early 1989 for depression and seizures caused by a head injury Mahan sustained many years earlier. The Tegretol bottle, clearly marked with Mahan's name, the name and telephone number of the prescribing physician, and the dosage to be administered, was delivered to the Plymouth House of Corrections ("PHC") when Mahan was transferred there around 9:00 or 10:00 p.m. on Tuesday, November 14. There is no record evidence that Mahan informed any corrections officer or other PHC personnel, prior to November 21, as to the actual symptoms he experienced while detained. The PHC corrections officers repeatedly refused Mahan's requests for Tegretol during the period November 14–21.[2]

Mahan first arrived at PHC late Tuesday evening, November 14, after the medical officer's regular hours. PHC corrections officers later informed Mahan that a medical officer was present at PHC on Tuesdays and Thursdays only. On November 15 and 16, Mahan was taken to court for arraignment and bail review. Thus, he was not seen by a medical officer on Thursday, November 16, since he did not return from court until after

---

1. The evidence and inferences are related in the light most favorable to Mahan, the party opposing judgment. *See Favorito v. Pannell,* 27 F.3d 716, 719 (1st Cir.1994); Fed.R.Civ.P. 50(a); *Velez–Gomez v. SMA Life Assur. Co.,* 8 F.3d 873, 874 (1st Cir.1993); Fed.R.Civ.P. 56.

2. PHC policy prohibits administering prescription medicines to a detainee without clearance from a "medical officer" *and* on days the detainee is scheduled to appear in court. Medical officers are corrections officers with some medical training.

the medical officer had left for the day. Four more days passed before a medical officer met with Mahan on Tuesday, November 21. In accordance with PHC policy, the medical officer declined to administer Tegretol to Mahan without first contacting the prescribing physician. Within one or two days after Mahan met with the medical officer on November 21, PHC administered the Tegretol to Mahan and his symptoms were alleviated.

Although Mahan was experiencing severe depression and anxiety attacks, and continuously complained to various corrections officers that he needed the Tegretol, there is no record evidence that he ever informed PHC personnel that he was experiencing these or any other symptoms prior to November 21. Nor is there any evidence that PHC personnel ever witnessed, or otherwise became aware of, any such symptoms. Mahan testified to an anxiety attack on the night of November 15, which was witnessed by a cellmate.[3] A guard who happened by the cell shortly after this incident, inquired whether Mahan was all right. To which Mahan replied simply: "I don't know. I don't feel good." Thus, there is no evidence remotely suggesting that PHC personnel had ever been made aware that Mahan's condition might warrant any deviation from the standard medical clearance policy.

After Mahan was released on bail, he was tried and acquitted, then initiated this section 1983 action, see 42 U.S.C. § 1983, against Detective Bouchie and the Town of Hull for wrongful arrest and interrogation, and against PHC for wrongfully withholding his prescription medicine. Felicia Mahan filed a pendent claim for loss of consortium. Prior to trial, the district court granted summary judgment for the Town of Hull. The Mahans proceeded to trial on their claims against Bouchie and PHC.

During the trial on liability, Mahan and/or his wife testified to the above-described events. In addition, before the district court ordered judgment as a matter of law under Rule 50(a), Mahan proposed to call the prescribing physician, to testify that Mahan had a "serious medical need" for Tegretol. Rather than admit the proffered testimony, the district court presumed, for purposes of the Rule 50(a) motion, that Mahan had a "serious medical need" for Tegretol.

Thereafter, the district court directed verdicts for Bouchie and PHC, ruling that Mahan had proffered insufficient evidence to establish an unconstitutional deprivation in connection with his arrest; the Miranda claim failed as a matter of law, since no interrogation actually occurred after Mahan requested an attorney; and PHC had not acted with "deliberate indifference" in withholding Mahan's prescription medicine.

A decision to grant summary judgment is reviewed de novo, Velez–Gomez v. SMA Life Assur. Co., 8 F.3d 873, 874 (1st Cir.1993), as is a judgment entered as a matter of law, Favorito v. Pannell, 27 F.3d 716, 719 (1st Cir.1994).

### A. The Arrest

 Under section 1983, a municipality may be answerable in damages under section 1983 to a person who is subjected to a deprivation of his constitutional rights as a result of official action taken pursuant to a "custom or usage" of the municipality. See Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Mahan claims that there was sufficient evidence that the Town of Hull, by "custom and usage," investigated criminal complaints inadequately, thereby causing arrests without probable cause. He relies on our decision in Bordanaro v. McLeod, 871 F.2d 1151, 1157 (1st Cir.) (single incident may provide some proof of municipal policy where, inter alia, large contingent of municipal police officers engaged in concerted assaultive conduct), cert. denied, 493 U.S. 820, 110 S.Ct. 75, 107 L.Ed.2d 42 (1989). Bordanaro held, however, that evidence of a single incident is insufficient, in and of itself, to

---

**3.** The cellmate neither testified nor provided a deposition concerning the circumstances surrounding any anxiety attack or other symptom experienced by Mahan. Mahan himself testified that he asked his wife to tell his lawyer that PHC personnel were refusing to administer Tegretol. Yet the lawyer neither testified nor is there any evidence that he ever contacted PHC.

establish a municipal "custom or usage" within the meaning of *Monell. Id.* at 1156–57.

Mahan has not brought his case near the *Bordanaro* umbrella, let alone under it. He produced no evidence of prior incidents of inadequate investigation by the Hull Police Department. Nor has he introduced direct evidence of improper investigatory methods or practices employed by the police in this case. Thus, we discern no error in the district court decision granting summary judgment on the section 1983 claim against the Town of Hull.

## B. The Arrest and Search

As there was insufficient evidence to support a trial-worthy claim against the Town of Hull, there was no actionable section 1983 claim against Detective Bouchie relating to Mahan's arrest. Mahan presented no evidence that Bouchie acted unreasonably in executing the valid arrest warrant, nor in effecting the arrest and contemporaneous automobile search. *See United States v. Doward,* 41 F.3d 789, 791 (1st Cir.1994) (police entitled to search hatch-area of automobile incident to lawful arrest of driver), *cert. denied,* —— U.S. ——, 115 S.Ct. 1716, 131 L.Ed.2d 575 (1995). The damage to the hatchback cord and the tape recorder, *see supra* p. 15, do not establish a trialworthy Fourth Amendment "unreasonable" search claim. There was no error in the district court decision to direct judgment as a matter of law in favor of Bouchie.

## C. The Miranda Claim

Mahan claims that Bouchie violated his *Miranda* rights by refusing to read the required *Miranda* warnings and threatening to place him in the holding cell if he declined to respond to questioning without an attorney present. We do not agree.

An "accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored." *Miranda,* 384 U.S. at 467, 86 S.Ct. at 1624. Although Bouchie did not give the required *Miranda* warnings, it is undisputed that Mahan made no statements pertinent to the Commesso investigation in response to interrogation. Upon Mahan's assertion that he wished to have an attorney present during interrogation, Bouchie ceased all interrogation. Every court of appeals which has spoken to this matter in similar circumstances has held that no actionable section 1983 claim lay. *See Weaver v. Brenner,* 40 F.3d 527, 535 (2d Cir.1994); *Wiley v. Doory,* 14 F.3d 993, 996 (4th Cir.1994) (Powell, J., sitting by designation); *Mahoney v. Kesery,* 976 F.2d 1054, 1061–62 (7th Cir.1992); *Cooper v. Dupnik,* 963 F.2d 1220, 1242–44 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 407, 121 L.Ed.2d 332 (1992); *Warren v. City of Lincoln, Neb.,* 864 F.2d 1436, 1442 (8th Cir.), *cert. denied,* 490 U.S. 1091, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989); *Bennett v. Passic,* 545 F.2d 1260, 1263 (10th Cir.1976). We now join their ranks. There was no actionable section 1983 claim relating to the alleged *Miranda* violation.[4]

## D. The Eighth Amendment Claim

Mahan challenges the district court ruling directing judgment as a matter of law on the claim that PHC refused to administer his Tegretol for seven days. This claim implicates the established PHC clearance policy preventing corrections officers from administering prescribed medicines on days the detainee is scheduled to appear in court *and* until permitted to do so by a "medical officer."

Eighth Amendment claims by pretrial detainees alleging denials of medical assistance essentially turn on whether the challenged official action constituted "deliberate indifference" to a "serious medical need". *Consolo v. George,* 58 F.3d 791, 793–94 (1st Cir.1995);

---

4. Although there can be no question that the alleged threat by Bouchie to keep Mahan in the holding cell until he responded to further questions—assuming it were credited by the factfinder—would be fully deserving of official sanction, it did not rise to the egregious level of police misconduct required for an actionable § 1983 claim absent evidence that it succeeded in overbearing Mahan's will to exercise his *Miranda* rights. *Cf. Cooper,* 963 F.2d at 1240–50 (police who engaged in conduct that "shocks the conscience," by attempting to "grill [suspect] until he confessed," and questioning him for thirty minutes despite assertion of right to counsel, are subject to liability under § 1983 even though defendant does not incriminate himself).

*Bowen v. City of Manchester,* 966 F.2d 13, 17 n. 13 (1st Cir.1992). A "serious medical need" is one "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir.1990), *cert. denied,* 500 U.S. 956, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991). The prescription indicated, and the district court assumed, that Mahan needed, and would benefit from, Tegretol. The record thus established a serious medical need.[5]

As the district court found, however, the record does not establish a trialworthy claim that PHC was "deliberately indifferent" to Mahan's "serious medical need." The Supreme Court recently defined "deliberate indifference" in the prison context. *See Farmer v. Brennan,* ⸺ U.S. ⸺, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In order to be found "deliberately indifferent," prison officials must be shown to have been *subjectively* aware of a condition requiring their intervention. *Id.* at ⸺ – ⸺, 114 S.Ct. at 1980–82. The evidence in this case established one component of the "subjective awareness" requirement; viz., PHC corrections officers were well aware that Tegretol had been prescribed for Mahan, and that he repeatedly requested it.

Nevertheless, the record on appeal contains no evidence from which a rational factfinder could conclude that PHC personnel were informed, or otherwise learned, of the serious symptoms Mahan actually experienced while detained, such as would have made them subjectively aware of a condition requiring their intervention prior to November 21. *Id.* at ⸺ – ⸺, 114 S.Ct. at 1980–82; *cf. Miranda v. Munoz,* 770 F.2d 255, 257–59 (1st Cir.1985) (acknowledging that prison officials knew pretrial detainee's epilepsy not under control). Absent evidence of subjective awareness, there could be no "deliberate indifference" to Mahan's serious medical need. *Farmer,* ⸺ U.S. at ⸺ – ⸺, 114 S.Ct. at 1980–82. Consequently, the Eighth Amendment claim failed as a matter of law. *See United States v. John Doe, a/k/a Pizarro–Calderon,* 61 F.3d 107, 111–12 (1st Cir.1995) (appellate court may affirm district court ruling on any ground supported in record).

Our ruling should not be misconstrued as condoning the status quo, however, but merely as indicating that PHC cannot be held liable for failing to adjust its policy to accommodate a "serious medical need" of which it was not made aware.[6] In these circumstances, Mahan simply failed to introduce evidence essential to enable a reasonable factfinder to conclude that PHC violated his Eighth Amendment rights.

The district court judgment is *affirmed.* All parties shall bear their own costs.

---

5. PHC argues that the district court ruling should be affirmed on the ground that Tegretol would not have alleviated Mahan's anxiety attacks. Given the presumption of "serious medical need" apparently indulged by the district court, which obviated the necessity for Mahan's prescribing physician to testify, *see supra* p. 16, we must reject this suggestion.

6. We add that the seemingly inflexible PHC policy relating to prescription medicines, coupled with the limited "medical officer" hours, could well have resulted in serious harm to Mahan during the extended and stressful period the medicine needed to control his previously diagnosed condition was withheld. *See Miranda,* 770 F.2d at 259 (detainee died after epileptic seizure).