McCue v. City of Rochester          CV-94-480-M    09/18/96
                 UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE


Richard G. McCue,
      Plaintiff,

v.                                           Civil No. 94-480-M

City of Rochester, New Hampshire;
Chief of Police Kenneth P. Hussey;
Police Officer Paul J. Moore;
and Does 1-3,
      Defendants.

                           O R D E R

      Richard G. McCue brings a civil rights action seeking money

damages against the City of Rochester, New Hampshire; Kenneth P.

Hussey, Chief of the Rochester Police; Rochester police officer

Paul J. Moore, and three other officers whose names are unknown.

McCue alleges that the defendants violated his constitutional

rights by failing to properly investigate and by concealing

exculpatory evidence that caused him to be wrongfully tried,

convicted, and imprisoned for first degree murder.  He also

asserts related tort claims.  The defendants move for summary

judgment.


                       **STANDARD OF REVIEW**

      Summary judgment is appropriate if the "pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party first must show the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). If that burden is met, the opposing party can avoid summary judgment on issues that it must prove at trial only by providing properly supported evidence of disputed material facts that would require trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is "material" if it might affect the outcome of the litigation, and an issue is "genuine" if the record would allow a reasonable jury to return a verdict in favor of the nonmoving party. Anderson, 477 U.S. at 248; see also National Amusements, Inc. v. Dedham, 43 F.3d 731, 735 (1st Cir.), cert. denied, 115 S.Ct. 2247 (1995). The court interprets the record in the light most favorable to the nonmoving party, the plaintiff in this case, and resolves all inferences in his favor. McIntosh v. Antonio, 71 F.3d 29, 33 (1st Cir. 1995).

## BACKGROUND

Alene Courchesne was murdered during the early morning hours of October 18, 1987. Her body was found a short distance from the northbound lane of the Spaulding Turnpike in Rochester. Richard McCue became a suspect early in the police investigation when they discovered that he was with Courchesne the night before she died and was apparently the last person seen with her. He was indicted and arrested in April 1988. McCue's defense pointed to two other suspects, Barry Lazaro, who arrived at the scene just after the police found Courchesne's body and left hurriedly, and Russell Healy, who also was seen with Courchesne on the night before she died.

At McCue's trial, the prosecution offered circumstantial evidence of his guilt, including a witness's description of a truck parked on the side of the highway about 2:30 a.m. near where the police discovered Courchesne's body that matched the truck McCue was driving on October 17; another witness's testimony that Courchesne and McCue left the witness's house just after 2:30 a.m., that she heard Courchesne's raised voice and the truck engine revving before they left (the witness's house was four minutes from where Courchesne's body was later found); evidence of truck tire marks and tire impressions in the gravel where Courchesne's body was found that matched the tires on

3

McCue's truck; evidence that an antifreeze stain was found on the ground at the scene and that McCue's truck had been filled recently and leaked antifreeze; and evidence that the boot impressions at the scene matched a test impression made with McCue's boots. McCue was convicted of first degree murder on December 8, 1988, and his conviction was affirmed by the New Hampshire Supreme Court in April 1991. State v. McCue, 134 N.H. 94 (1991).

After losing on appeal, McCue moved for a new trial on the grounds of newly-discovered exonerating evidence from witnesses who, he alleged, would implicate Healy in Courchesne's murder. The state court denied his motion, and he moved for reconsideration, offering additional new witnesses including Elizabeth Grant. Healy died in November 1991 while McCue's motion was pending. In April 1992, the state court held an evidentiary hearing on McCue's motion and heard testimony from Grant and Sargent Paul Moore of the Rochester Police Department as well as other witnesses.

Grant testified that within a few weeks of Courchesne's death, while she and Healy were discussing the death at the home of a friend, Healy said, referring to Courchesne: "Well, I'm two or three or four hundred dollars in the hole with her. I don't

4

have to worry about that anymore because I took care of her."
Grant further testified that she called the Rochester Police
Department a few weeks after her conversation with Healy and met
with Officer Paul Moore and another unidentified officer.  She
said that when she tried to tell Moore what Healy told her about
Courchesne, Moore was uninterested and ended the interview.  She
testified that the police never contacted her again about the
case.  However, Moore testified that he did not know Grant, that
he had never been in contact with her or obtained information
from her, and that he had never even seen her except in the
courtroom.  Before the court ruled on the motion for
reconsideration, McCue filed another motion for a new trial,
alleging juror misconduct, and on July 27, 1992, the state court
granted that motion.

Prior to McCue's second trial, the prosecution moved in
limine to exclude Grant's testimony about Healy's statements as
inadmissible hearsay.  The court ruled that the statements were
inadmissible because they lacked the necessary circumstantial
guarantees of trustworthiness.  McCue was retried, and on
February 27, 1993, he was found not guilty on all charges.
Following his acquittal, McCue brought the present action.

5

**DISCUSSION**

McCue alleges that Moore and three Rochester police officers, identified only as Does one through three, conspired to and did conceal Grant's statements implicating Healy in Courchesne's murder, and failed to properly investigate the exculpatory information provided by Grant. Based on those factual allegations, McCue brings federal claims under 42 U.S.C.A. § 1983 against the individual defendants alleging violations of his due process rights under the Fourth, Fifth, and Fourteenth Amendments, and against the City of Rochester and Chief of Police Hussey, alleging that their failure to properly hire, train, and supervise the police evidenced an official policy to violate his due process rights through the actions of the defendant officers. In addition, he alleges that the defendants' actions subjected him to wrongful imprisonment and cruel and unusual punishment in violation of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights. He also alleges that the defendants subjected him to malicious prosecution without probable cause in violation of his Fourth, Fifth, and Fourteenth Amendment rights. McCue brings related tort claims alleging negligence, negligent supervision, malicious prosecution, and conspiracy to commit malicious prosecution. The defendants move

6

for summary judgment contending that McCue's § 1983 claims are barred by the applicable statute of limitations and the preclusive effect of the state court's evidentiary rulings; that they are entitled to qualified immunity; and that McCue cannot show that the alleged violations resulted from implementation of a municipal custom, policy, or practice, or that the supervisors acted recklessly or with callous indifference to McCue's rights. The issues raised in the defendants' motion are resolved as follows.

## A. Statute of Limitations

The timeliness of McCue's § 1983 claims is governed by the analogous three-year limitations period found in New Hampshire law. See N.H. Rev. Stat. Ann. §§ 507-B:7 & 508:4; see also Owens v. Okure, 488 U.S. 235, 236 (1989); Wilson v. Garcia, 471 U.S. 261, 276 (1985). To determine when McCue's § 1983 claims accrued for purposes of beginning the limitations period, the court must identify "the common law cause of action most closely analogous to the constitutional right at stake" and then determine when the plaintiff "'kn[ew] or ha[d] reason to know of the injury which is the basis of the action.'" Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3 (1st Cir. 1995) (quoting Street

7

v. Vose, 936 F.2d 38, 40 (1st Cir. 1991)).  McCue's federal claims, which are brought under the Fourth, Fifth, Eighth, and Fourteenth Amendments, all challenge the constitutionality of his conviction and confinement pursuant to legal process, and are most closely analogous to the common law tort of malicious prosecution.  See Heck v. Humphrey, 114 S. Ct. 2364, 2371 (1994) (evaluating claim by inmate that his constitutional rights were violated by police and prosecutors' conspiracy to conceal exculpatory evidence); see also Calero-Colon, 68 F.3d at 3-4.  A plaintiff may not maintain a § 1983 claim challenging the legality of his conviction and confinement and seeking damages until the challenged conviction has been invalidated.  Heck, 114 S. Ct. at 2372-73 (§ 1983 cause of action does not exist unless and until the conviction is reversed).  Because McCue's § 1983 claims did not accrue until he was acquitted on February 27, 1993, and he filed the present action on September 15, 1994, his § 1983 claims are not barred by the three-year limitation period. Summary judgment is accordingly denied on statute of limitations grounds.

**B.**  **Collateral Estoppel**

8

The defendants argue that the state court's evidentiary ruling prior to McCue's second murder trial (i.e. that Healy's statements to Grant were inadmissible to prove that Healy and not McCue murdered Courchesne) established for this litigation that Grant's testimony is not credible. Because the defendants advance the preclusive effect of a New Hampshire state court ruling, New Hampshire's collateral estoppel rule applies. See Commercial Assocs. v. Tilcon Gammino, Inc., 998 F.2d 1092, 1096 (1st Cir. 1993). The following elements of collateral estoppel are well-established under New Hampshire law: (1) the issue or fact subject to estoppel must be identical in both actions; (2) the first action must have resulted in a final resolution of the issue or fact on the merits; (3) the party to be estopped must be the same or in privity with the party in the first action; (4) the party to be estopped must have had a full and fair opportunity to litigate the issue in the first action; and (5) the issue must have been essential to the final judgment in the first action. Simpson v. Calivas, 139 N.H. 1, 7 (1994).

In the present analysis, however, it is unnecessary to progress beyond the first requirement because the defendants have not shown that the state court's ruling established the identical fact that they assert is precluded: Grant's credibility. The

9

defendants contend that the state court "specifically found that Grant's testimony was lacking in trustworthiness." The reference to the record provided by the defendants does not support that assertion. In another document in the record, however, the court ruled that Healy's statement to Grant was inadmissible because there were "no corroborating circumstances to indicate the trustworthiness of the statement" and "no circumstantial guarantees of trustworthiness." Superior Court Order, dated January 19, 1993. Although the state court noted that other witnesses contradicted Grant's testimony, the court did not determine the relative credibility of the conflicting witnesses. The defendants have shown only that the state court found Healy's statement lacked sufficient indicia of trustworthiness to meet the evidentiary standard, not that a finding was made as to Grant's credibility. Cf. Glantz v. United States, 837 F.2d 23, 25 (1st Cir. 1988) (credibility of a government witness established in prior criminal conviction where testimony was essential to verdict and precluded issue of witness's perjury in subsequent civil action). Accordingly, the state court rulings do not preclude the issue of Grant's credibility in this action.

C. **Malicious Prosecution Under § 1983**

10

The defendants contend that McCue cannot maintain a § 1983 claim for malicious prosecution as a violation of the Fourteenth Amendment. Because § 1983 creates no substantive rights, but only a means for redressing violation of federal rights, a claim brought under § 1983 must allege a specific federal constitutional or statutory violation as the basis of the claim. Albright v. Oliver, 114 S. Ct. 807, 811 (1994). McCue alleges in Count Five that the defendants' actions concerning Grant's exculpatory evidence subjected him "to malicious prosecution without probable cause, in violation of the constitutional rights of the plaintiff as guaranteed by the Fourth, Fifth, and Fourteenth Amendments."

The plurality opinion in Albright precludes a § 1983 claim alleging a right to be "free of prosecution without probable cause" under the substantive due process protection afforded by the Fourteenth Amendment. Id. at 812; see also Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 43 (1st Cir. 1994). In addition, as the common law of New Hampshire provides a cause of action for malicious prosecution, McCue cannot bring a § 1983 Fourteenth Amendment procedural due process violation claim.[1] Reid v. New

_____

[1] McCue denies that he has asserted a procedural due process claim.

11

<u>Hampshire</u>, 56 F.3d 332, 341 (1st Cir. 1995).  Therefore, the defendants are entitled to summary judgment on McCue's claims of wrongful prosecution without probable cause in violation of his rights under the Fourteenth Amendment as alleged in Count Five.[2]

## D.  <u>Qualified Immunity</u>

Public officials performing discretionary functions are entitled to qualified immunity from suit for violations of federal law "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

---

[2]  <u>Albright</u> seemingly left open the possibility of a § 1983 claim addressing wrongful prosecution (because lacking probable cause) if the claim were based on an illegal seizure in violation of the Fourth Amendment.  <u>Id.</u> 114 S. Ct. at 813; <u>see also</u>, <u>Calero-Colon</u>, 68 F.3d at 3 n.7; <u>Whiting v. Traylor</u>, 85 F.3d 581, 584 n.3 (11th Cir. 1996).  In addition, since <u>Albright</u>, the Supreme Court implicitly has recognized that other constitutional claims analogous to the tort of malicious prosecution, such as claims alleging that defendants withheld exculpatory information, may be brought under § 1983.  <u>See</u> <u>Heck</u>, 114 S. Ct. at 2370-2372, <u>see also</u> <u>McMillan v. Johnson</u>, 88 F.3d 1554, 1567 n.12 (11th Cir. 1996) (discussing §1983 liability for a violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and collecting cases); <u>Reid</u>, 56 F.3d at 336 n.9, 341 (§ 1983 procedural due process liability for withholding exculpatory evidence as New Hampshire common law does not provide a remedy); <u>Taylor v. Waters</u>, 81 F.3d 429, 436 n.5 (4th Cir. 1996) (§ 1983 claim based on officer's failure to disclose exculpatory information not affected by <u>Albright</u>).  As the defendants have not challenged McCue's claims on other grounds, the court has no reason to address the defendants' liability based on the other constitutional rights alleged.  <u>See, e.g.</u>, <u>Roche v. John Hancock Mut. Life Ins. Co.</u>, 81 F.3d 249, 256 n.5 (1st Cir. 1996).

reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The qualified immunity analysis in this circuit is two-pronged: (1) "the court must establish whether the constitutional right asserted by the plaintiff was 'clearly established' at the time of the alleged violation," and (2) "the court must ask whether 'a reasonable official situated in the same circumstances should have understood that the challenged conduct violated that established right.'" St. Hilaire v. City of Laconia, 71 F.3d 20, 24 (1st Cir. 1995) (quoting Burns v. Loranger, 907 F.2d 233, 236 (1st Cir. 1990)), cert. denied, 116 S. Ct. 2548 (1996). "The ultimate question of whether a defendant is entitled, on a given set of facts, to the protection of qualified immunity is a question of law for the court to decide." Wood v. Clemons, 89 F.3d 922, 927 (1st Cir. 1996).

A "necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." Siegert v. Gilley, 500 U.S. 226, 232 (1991). If the plaintiff has failed to show a constitutional violation, the court may bypass the qualified immunity analysis and address the merits of the claim. United States v. Aversa,

13

No. 95-2216, 1996 WL 466426 *14 (1st Cir. Aug 21, 1996). The burden is on the plaintiff to provide sufficient support for his federal claim to show infringement of a federal right, and if he fails to do so, the defendant is necessarily entitled to summary judgment. See Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 228 (1st Cir. 1992).

The individual defendants argue that they did not violate McCue's constitutional rights by failing to investigate or disclose allegedly exculpatory information provided by Grant. They contend that they had probable cause to arrest McCue and that they had no independent duty to disclose exculpatory information to McCue. Alternatively, they invoke qualified immunity from liability. As the defendants have challenged the existence of the federal rights asserted by McCue and also have asserted qualified immunity, it is appropriate to begin by determining whether the challenged conduct violated McCue's federal rights, and if so, then determine whether the defendants are nevertheless entitled to qualified immunity.[3]

---

[3] The parties dispute the facts at the core of McCue's claims. McCue contends that Grant provided exculpatory information to the police, which they withheld from the prosecution and McCue, but defendants contend that Grant never contacted the police, never provided any such information, and they thus withheld nothing. For purposes of summary judgment, the defendants aim at the legal underpinnings of McCue's claim

14

### 1. Duty to investigate.

McCue claims a constitutional right not to be arrested unless the police first investigate allegedly exculpatory information. While police are obligated to conduct a fair investigation of a crime, they have no constitutional duty to investigate any particular information and no duty to investigate after determining that probable cause exists to arrest a suspect. See Baker v. McCollan, 443 U.S. 137, 146 (1979) (police have no duty to investigate every claim of innocence); Franco-De Jerez v. Burgos, 876 F.2d 1038, 1042 (1st Cir. 1989) (no duty to investigate after a determination of probable cause to arrest); see also Romero v. Fay, 45 F.3d 1472, 1476-77 (10th Cir. 1995) (collecting cases discussing police duty to investigate prior to arrest).

McCue's response to defendants' summary judgment motion is inadequate and off the mark. For example, he merely states that Grant's information about Healy's involvement in Courchesne's murder negates probable cause. He fails to show what evidence the police relied on in determining that they had probable cause to arrest, and why Grant's statements would sufficiently undermine any police conclusion, given all of the information in

rather than dispute facts.

15

their possession, that there was a reasonable probability that he committed the murder.[4] The mere existence of some exculpatory information does not necessarily negate probable cause and "conclusory responses unsupported by the evidence" are insufficient to oppose summary judgment.[5] Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Even if McCue's belated suggestion of an illegal arrest in his objection were credited, he still has not shown that the evidence relied on to obtain his arrest warrant would have been insufficient to support probable cause if Grant's statements were also considered. Because McCue has not carried his burden of showing that the defendants' failure to investigate allegedly exculpatory information resulted in his having been arrested without probable cause, in violation

---

[4] "Probable cause exists if 'the facts and circumstances within [a police officer's] knowledge and of which [the officer] had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution' to believe that a crime has been committed or is being committed." Alexis v. McDonald's Restaurants of Mass., Inc., 67 F.3d 341, 351 (1st Cir. 1995) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)). A probable cause determination is based on a reasonable probability that the suspect committed a crime and does not require sufficient evidence to convict. Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992).

[5] Although McCue's inability to support his argument that the defendants lacked probable cause to arrest him strongly suggests that he cannot maintain his Fourth Amendment claim, that issue was not squarely presented for summary judgment by the defendants.

16

of his federal constitutional rights, that claim cannot survive defendant's summary judgment motion.

**2. Duty to disclose exculpatory information.**

The defendants assert that they had no independent duty to disclose exculpatory information to McCue and, therefore, did not violate his rights by failing to disclose the information allegedly provided by Grant. A prosecutor's constitutional duty to disclose exculpatory information to the defense in a criminal case was established in Brady v. Maryland, 373 U.S. 83 (1963). Since Brady, courts have recognized a concomitant duty obligating police investigators to turn over exculpatory and impeachment evidence to the prosecutor. See Reid, 56 F.3d at 341; see also, e.g., MacMillian v. Johnson, 88 F.3d 1554, 1566-67 (11th Cir. 1996) (collecting cases); Walker v. City of New York, 974 F.2d 293, 299 (2d Cir. 1992) (collecting cases), cert. denied, 507 U.S. 9611 (1993). For purposes of this motion only, it is accepted that Grant's statements were made to police investigators and defendants did not disclose those statements to the prosecutor.

The defendants would nevertheless be entitled to qualified immunity if their obligation to turn over exculpatory information

17

to the prosecutor (who in turn would deliver it to the defense) was not clearly established when they allegedly concealed Grant's statements, or if reasonable officers in the same circumstances would not have known that disclosure was required. See St. Hilaire, 71 F.3d at 24. The prosecution's obligation to disclose was clearly established by Brady in 1963. An investigator's duty to disclose to the prosecutor was clearly established in 1987, when Grant states that she gave Moore the information implicating Healy, and in 1988, when McCue was tried and convicted. See McMillan, 88 F.3d at 1568-69 ("We agree with the Fifth Circuit that clearly established law in 1987 and 1988 prohibited the police from concealing exculpatory or impeachment evidence."); see also Campbell v. Maine, 632 F. Supp. 111, 121 (D. Me. 1985), aff'd, 787 F.2d 776 (1st Cir. 1986). A police officer's constitutional obligation to turn over exculpatory information to the prosecutor was clearly established when the defendants allegedly withheld information, and the defendants have offered no argument that reasonable police officers in the same circumstances would not have recognized that obligation.[6]

---

[6] The defendants have not addressed whether the information Grant allegedly provided meets the materiality requirement that triggers the duty to disclose. See Kyles v. Whitley, 115 S. Ct. 1555, 1565-66 (1995).

18

Therefore, the defendants are not entitled to qualified immunity with respect to McCue's claim that they concealed exculpatory information provided by Grant.

### 3. Wrongful imprisonment.

The defendants contend that McCue cannot prove a violation of his federal rights based on a theory of wrongful imprisonment or cruel and unusual punishment as alleged in Count Four. In response, McCue argues that his imprisonment following conviction for first degree murder was "conscience-shocking" in violation of the substantive due process provision of the Fourteenth Amendment because the defendants withheld exculpatory information.[7] McCue offers no legal authority to support his claim. To the contrary, "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted--indeed for every suspect released." Baker, 443 U.S. at 145. McCue's "wrongful imprisonment" claim merely restates his Brady claim that he was wrongfully convicted of murder because the defendants withheld

_____

[7] Although McCue also alleged cruel and unusual punishment in violation of the Eighth Amendment, he has waived that claim by failing to respond to the defendants' challenge in their motion for summary judgment. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S. 1082 (1990).

19

exculpatory information with additional allegations of injury caused by imprisonment.  Accordingly, summary judgment is granted in the defendants' favor on Count Four.

## E.  Municipal Liability

A claim of municipal liability under § 1983 must be based on a municipal policy, custom, or practice that caused, or was a moving force behind, a deprivation of the plaintiff's constitutional rights.  Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978).  The City of Rochester contends that McCue cannot establish any city policy, custom, or practice to withhold exculpatory information in support of his claim against the city.  McCue responds that the single incident in this case, in which Moore and three other unidentified officers allegedly withheld exculpatory information, is sufficient to meet the Monell requirement.[8]  Although a single incident of significant magnitude can provide some proof of a municipal policy or custom to act in a manner consistent with the incident, it is

_____

[8]  McCue has not shown that any of the police officer defendants were policymakers such that their alleged decision to withhold evidence could constitute municipal policy.  See, e.g., Bordanaro, 871 F.2d at 1157.  He also has not shown that Chief Hussey had any actual or constructive knowledge of the defendant officers' alleged conduct.  Id.

20

insufficient standing alone to prove an underlying policy or custom.  Bordanaro v. McLeod, 871 F.2d 1151, 1156-57 (1st Cir.), cert. denied, 493 U.S. 820 (1989).  McCue offers no evidence of prior similar incidents or other evidence of a city policy or practice to withhold exculpatory information from prosecutors and, therefore the "Bordanaro umbrella" offers him no assistance in proving a municipal policy or practice.  See Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 17 (1st Cir. 1995).  The City of Rochester is entitled to summary judgment as McCue has not come forward with any evidence from which a trier of fact could find that the alleged concealment of exculpatory evidence was done in accordance with some municipal custom, policy, or regulation.

Similarly, McCue provides no evidentiary support for his claim that the city and its police chief failed to properly train, supervise, or discipline the police officer defendants. Claims of inadequate training "require proof that the failure to train was a policy or deliberate choice made by the municipality and that there is a direct link between the municipality's policy and the constitutional violation."  Bowen v. City of Manchester, 966 F.2d 13, 18 (1st Cir. 1992) (citing Canton v. Harris, 489 U.S. 378, 390 (1989)).  Inadequate police training is actionable

under § 1983 only when "the municipality's failure to train its officers 'amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" <u>Manarite v. City of Springfield</u>, 957 F.2d 953, 958 (1st Cir. 1992) (quoting <u>Canton</u>, 489 U.S. at 388), <u>cert. denied</u>, 506 U.S. 837 (1992). McCue offers no evidence that Rochester police were not trained to provide exculpatory information to prosecutors, much less that any training omissions were due to the city's deliberate indifference to the constitutional rights of accused persons.

There being no factual basis in the record to support municipal liability under § 1983, Rochester and the defendants sued in their official capacities[9] are entitled to entry of summary judgment in their favor.

## F.  <u>Supervisory Liability</u>

McCue's claims against Chief Hussey are apparently based on a theory of supervisory liability as he has not alleged that any

---

[9]  The claims against Hussey and Moore in their official capacities, in effect, are suits against Rochester and do not survive summary judgment. <u>See</u>, <u>e.g.</u>, <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting <u>Monell v. New York City Dep't of Social Servs.</u>, 436 U.S. 658, 690 n.55 (1978)).

individual actions by Hussey violated his rights.[10]  A plaintiff suing a supervisor under § 1983 must show that (1) a subordinate violated his constitutional rights; (2) the supervisor's acts or omissions caused the subordinate's unconstitutional conduct; and (3) the supervisor was deliberately indifferent to the constitutional rights of others in acting or failing to act. Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 92 (1st Cir. 1994); Manarite, 957 F.2d at 955-56.  The First Circuit has determined that deliberate indifference requires "actual knowledge [or willful blindness] of impending harm, easily preventable."  Manarite, 957 F.2d at 956 (quoting DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991)).  McCue has made no allegations and has offered no evidence that Chief Hussey knew about Moore's alleged conduct or that under the circumstances he was willfully blind to Moore's alleged conduct.  Because McCue alleges only supervisory liability with respect to Chief Hussey, making no factual allegations that he participated in withholding exculpatory information, Hussey is entitled to summary judgment on all of McCue's federal claims.

---

[10]  Although the defendants refer to "supervisors" in the plural form, McCue names only Hussey as a supervisor and provides no evidence of other supervisors' liability.

## G. Conspiracy Claims

A claim alleging a civil conspiracy under § 1983 requires an agreement among two or more persons to violate the plaintiff's federal rights and an actual deprivation of those rights. Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988); Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980). Accordingly, to the extent McCue's claims are dismissed on summary judgment, his related conspiracy claims also do not survive.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (document no. 12) is granted in part and denied in part. Summary judgment is granted in favor of the City of Rochester and Chief Hussey as to all of McCue's federal claims. Summary judgment is granted in favor of the remaining individual defendants on all claims in Count Four, the Fourteenth Amendment claim in Count Five, and all remaining federal claims based on defendants' failure to properly investigate exculpatory information. Summary judgment is also granted in favor of all individual defendants on the conspiracy claims alleged in Count One that are based on the claims on which summary judgment has been granted. Summary judgment is otherwise denied; the court is

24

unable to be more specific as to what remains of plaintiff's complaint (in addition to his claims based on failure to disclose exculpatory evidence) because the complaint does not clearly describe the precise causes of action he purports to be pursuing beyond what has been discussed above.

     SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

September 18, 1996

cc:  Andrew L. Isaac, Esq.
     William G. Scott, Esq.

25