Rossi v. Town of Pelham                    CV-96-139-SD 12/18/97 P

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF NEW HAMPSHIRE**


Cheryl B. Rossi

    v.                                    Civil No. 96-139-SD

Town of Pelham, et al


**O R D E R**


In this civil rights action under 42 U.S.C. § 1983, plaintiff Cheryl B. Rossi, who was serving as town clerk and tax collector for the Town of Pelham, New Hampshire, claims that Pelham officials unlawfully searched her office at the town hall and unlawfully seized her person and property by placing a police guard in her office to watch over her on her last day of service. Rossi also alleges numerous state law claims arising out of the same facts. Before the court are both plaintiff's and defendant Town of Pelham's motions for reconsideration.

First, Pelham urges this court to reconsider on the ground that Rossi waived her Fourth Amendment rights by consenting to the warrantless search of her office. However, Rule 59, Fed. R. Civ. P., "may not be used to argue a new legal theory." FDIC v. World University, Inc., 978 F.2d 10, 16 (1st. Cir. 1992). Because Pelham's original motion for summary judgment did not ask the court to consider the consent defense, the court cannot

reconsider that defense on a Rule 59 motion.

Second, Pelham argues that the search of Rossi's office was reasonable. The search was aimed at protecting municipal documents which, as Pelham goes to great lengths to point out, is an important governmental goal. However, the reasonableness of a search does not depend on the importance of the governmental goal asserted in justification. For example, apprehending dangerous criminals ranks among the most compelling goals of the state. Regardless, the police must still secure a search warrant before searching the home of a known criminal. A warrantless search is only justified in the limited circumstances when "the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search." O'Connor v. Ortega, 480 U.S. 709, 720 (1987) (internal quotations omitted). Pelham maintains that the exigency of the threat to the municipal records demanded an immediate warrantless search. However, municipal officers knew on Wednesday that Rossi planned to take home the records on Friday, which was clearly sufficient time to obtain a search warrant. In addition, the burden of obtaining a warrant would not have frustrated Pelham's purpose behind the police search of Rossi's office because less intrusive means were available. Despite Pelham's extensive arguments to the contrary, this court stands behind its holding that searches are inherently more

2

intrusive when performed by police rather than non-police government officials.

Third, Pelham argues that it was "patently inconsistent" to both deny the municipality summary judgment and, at the same time, grant the individual officials qualified immunity on the ground that their actions were objectively reasonable. However, even the most cursory review of the case law reveals Pelham's argument to be unfounded and plainly contrary to established precedent. In Owen v. City of Independence, 445 U.S. 622, 625 (1979), the United States Supreme Court held a municipality liable, even though the municipal officials who directly caused the constitutional violation acted reasonably and in good faith. The Court reasoned that, unlike the offending officials, municipalities enjoy no qualified immunity from liability under 42 U.S.C. § 1983. Despite the Court's clear holding in Owen, Pelham claims that the case law supports its argument. But this court finds inapposite the three cases cited by Pelham. Pelham takes quoted material out of context from Andrews v. City of Philadelphia, 895 F.2d 1469, 1481 (3d Cir. 1990). While the Third Circuit said, "it is impossible . . . to inculpate the head and find no fault with the foot," id. at 1481, the court meant that it was inconsistent to inculpate the municipality and, at the same time, exculpate the municipal policy maker on grounds

3

that he did not violate plaintiff's constitutional rights.  The case at hand is distinguishable.  Here, the court has found fault with the foot, because the Pelham officials violated Rossi's constitutional rights.  The court has simply excused the foot's fault on grounds of qualified immunity, but this does not mean the court must likewise excuse the head.

The section of the August 15, 1995, order regarding defendants' motion for summary judgment in Alberts v. Town of Newton, 94-005-JD (DiClerico, J.), is likewise taken out of context by defendants.  There, the court said, "[w]here a plaintiff fails to establish that individual police officers inflicted constitutional injury, the municipality which employs the officers is not liable for the alleged violations."  Id. at 15.  Alberts does not mean that when the individual police officers do inflict constitutional injury but have qualified immunity, the municipality may not be liable.

Pelham misinterprets Burns v. Loranger, 907 F.2d 233, 239 (1st Cir. 1990).  That case cannot mean, as Pelham claims, that no causal connection exists between municipal policy and the alleged constitutional violation whenever the municipal officials act reasonably.  This reading of the case ignores the clear holding in Owen, in which the Court held the municipality liable even though the municipal officers acted reasonably.  In sum,

4

Pelham may still be liable, even though the law in this area was ambiguous at the time Pelham officials acted.

Fourth, Pelham asserts that the court misapplied <u>Monell v. New York City Dep't of Social Servs.</u>, 436 U.S. 658 (1978), and its progeny. First, Pelham cites <u>Surplus Store & Exchange Inc. v. City of Delphi</u>, 928 F.2d 788, 791 (7th Cir. 1991), for the proposition that a municipality cannot be held liable for merely enforcing state law. In <u>Surplus Store</u>, the plaintiff claimed that municipal officers, acting pursuant to state statutes which authorized their conduct, seized his property without due process of law. In order to establish the municipality's fault for the alleged constitutional violations, the plaintiff argued that the municipality had a "policy" of enforcing the unconstitutional state statutes. The court rejected plaintiff's claim on the ground that the moving force behind the constitutional violations was the constitutionally deficient state statutes rather than the "innocuous" municipal policy of enforcing state law. The case at hand is clearly distinguishable. Rossi claims that Pelham officials enforced New Hampshire Revised Statutes Annotated (RSA) 41:36, which requires the outgoing tax collector's documents to be surrendered to the board of selectmen, in an unconstitutional manner by deploying Officer Cunha to perform a warrantless search of Rossi's office. Thus, the "policy" is constituted by the

unconstitutional manner that Pelham officials chose to enforce state law, rather than, as in Surplus Store, the "innocuous" act of enforcing state law. This Pelham policy was the moving force behind the constitutional violation, not the otherwise lawful RSA 41:36.

Pelham claims that Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 16-17 (1st Cir. 1995), establishes that a single municipal decision cannot constitute policy. Once again, Pelham has misinterpreted the case to the point of plain error. In fact, the court simply said that "evidence of a single incident is insufficient, *in and of itself*, to establish a municipal 'custom or usage.'" Id. In its recent opinion in Board of County Comm'rs v. Brown, 117 S. Ct. 1382, ___ U.S. ___ (1997), the Supreme Court reaffirmed its previous rulings that, section 1983 liability may rest on a single decision attributable to the municipality. The Brown Court distinguished "facially lawful [municipal decisions that] launch a series of events that ultimately cause a violation of federal rights," id. at 1389, on the one hand, from "municipal action [that] *itself* violates federal law, or directs an employee to do so," on the other hand, id. at 1388. For the first class of cases, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its

6

employee." Id. at 1389. Thus, "a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." Id. at 1390. When a claim of municipal liability rests on a decision that governs a single case, there can be no notice to the municipal decision maker that his approach is inadequate. Thus, it is difficult to establish that a single decision was made with deliberate indifference. On the other hand, when liability rests on a facially unlawful policy, "resolving these issues of fault and causation is straightforward." Id. at 1388. In such a case, the constitutional violation was intentional,* even if not always willful. Since proof of fault and causation are less problematic, municipal liability based on a single decision is

---

\* Thus, for municipal policy that is either facially unlawful or directs unlawful conduct, plaintiffs need not further establish "deliberate indifference." See, e.g., Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986). The "deliberate indifference" standard is a mens rea requirement that is unnecessary and redundant when a plaintiff establishes an intentional constitutional violation caused by facially unlawful policy. Pelham, in footnote 2 of its memo, argues that the court was incorrect in distinguishing between facially lawful and unlawful policies. However, the court finds Pelham's argument curious given the Brown Court's unambiguous reliance upon such a distinction. See Brown, supra, 117 S. Ct. at 1388-89, ___ U.S. at ___.

more proper when that decision is itself unlawful or directs unlawful conduct.

Here, Pelham policy specifically directed the conduct resulting in violation of Rossi's Fourth Amendment rights. Thus this policy was a sufficient ground for Pelham's liability, even though it was only a single decision.

In sum, motions for reconsideration should only be filed to correct manifest errors of law and fact upon which summary judgment was granted. It is not, however, an opportunity to present new arguments or speculative legal theories based on exaggerated and questionable interpretations of the caselaw. For that reason, defendant Pelham's motion to reconsider is denied.

Rossi has also filed under Rule 59 for reconsideration of the court's previous order. First, Rossi argues that the seizure of Rossi's person was unreasonable because Pelham could have protected its reversionary interests in the records by less intrusive means. However, the Supreme Court in United States v. Sokolow, 490 U.S. 1, 11 (1988), held that the reasonableness of a seizure does not turn on the availability of less intrusive means. In addition, the court stands by its ruling that the Pelham officials' conduct was not extreme or outrageous as a matter of law.

## Conclusion

For the forgoing reasons, in response to both Pelham's and Rossi's motions for reconsideration, the court herewith denies the relief therein sought.

SO ORDERED.


_____
Shane Devine, Senior Judge
United States District Court

December 18, 1997

cc:   Michael L. Donovan, Esq
      Donald E. Gardner, Esq.
      Diane M. Gorrow, Esq.