**UNITED STATES of America, Plaintiff, Appellee,**

v.

**John R. DOWARD, Defendant, Appellant.**

**No. 93–2249.**

United States Court of Appeals, First Circuit.

Heard Oct. 5, 1994.

Decided Dec. 14, 1994.

Paul J. Garrity, Londonderry, NH, for appellant.

Jean L. Ryan, Asst. U.S. Atty., with whom Paul M. Gagnon, U.S. Atty., Concord, NH, was on brief.

Before CYR and STAHL, Circuit Judges, and DiCLERICO,* Chief District Judge.

CYR, Circuit Judge.

After entering a conditional plea of guilty, and reserving the right to appeal an earlier order rejecting his motion to suppress a .38 caliber handgun seized incident to his arrest, *see* Fed.R.Crim.P. 11(a)(2), defendant John

* Of the District of New Hampshire, sitting by designation.

R. Doward was convicted and sentenced in the District of New Hampshire on a one-count indictment charging possession of a firearm by a convicted felon, *see* 18 U.S.C. §§ 922(g)(1), 924(e)(1). Doward contends that a warrantless search of the hatch area of the two-door Ford Mustang which he was driving immediately before the arrest violated the Fourth Amendment. *See* U.S. Const. amend. IV. We affirm the district court judgment.

# I

## BACKGROUND

The relevant facts are not in dispute. On October 18, 1992, Officers James Tareco and Robert Oxley of the Manchester Police Department stopped the Ford Mustang after it made an illegal turn. Ten minutes later, a routine license check disclosed that Doward was wanted in Ohio on an outstanding arrest warrant. Doward was ordered out of the car, arrested, handcuffed, and then placed in a nearby police cruiser, awaiting transport to the police station.

Meanwhile, the male passenger in the right front seat had been instructed to get out of the Ford Mustang and remain on the sidewalk as the front and back seat areas were searched. Although the hatch area was accessible from the back seat, Officer Tareco chose to gain access by unlocking the hatch from outside the vehicle. The hatch area was found to contain two partially zipped suitcases. In the first suitcase he searched, Tareco discovered a gun cleaning kit and ammunition.

During the search, Doward's daughter suddenly emerged from the gathering crowd and informed Tareco that the Ford Mustang belonged to her, but the suitcases did not. At this point, the police van arrived and Doward was transported to the station. Resuming the search, Officer Oxley seized the loaded .38 caliber handgun from the second

suitcase discovered in the hatch area. Three minutes had elapsed since Doward's arrest; thirty seconds since he was transported from the scene. Doward's daughter was arrested shortly thereafter, when a further check revealed that she too was wanted on an outstanding arrest warrant.

# II

## DISCUSSION

■ The government is required to establish that the hatch-area search which yielded the .38 caliber handgun came within a recognized exception to the Fourth Amendment warrant requirement. *See United States v. Jeffers*, 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951). The government defends the search as "a contemporaneous incident of [Doward's] arrest." *See New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981).

■ Doward argues that the search which yielded the handgun was not sufficiently contemporaneous with his arrest because the handgun was seized *after* he had been removed from the scene, at a time when there was no conceivable risk that he could have reached it. Thus, even if the handgun were the fruit of an automobile passenger-compartment search *commenced* as a contemporaneous incident of his arrest, Doward would urge a *per se* suppression rule as to any evidence seized after the arrestee has been removed from the scene and the security rationale for the *Belton* rule no longer obtains. *See, e.g., State v. Badgett*, 200 Conn. 412, 512 A.2d 160, 169 (holding that the right to continue a *Belton* search "ceases the instant the arrestee departs the scene"), *cert. denied*, 479 U.S. 940, 107 S.Ct. 423, 93 L.Ed.2d 373 (1986); *State v. Fry*, 131 Wis.2d 153, 388 N.W.2d 565, 577 (same), *cert. denied*, 479 U.S. 989, 107 S.Ct. 583, 93 L.Ed.2d 586 (1986).[1] Alternatively, Doward argues that the hatch area was not subject to a

---

**1.** Since Doward simply contrasts the present case with those in which an arrestee remains in close proximity to the vehicle and continues to pose at least some unpredictable, albeit slight, risk to the security of the officers or the evidence (*e.g.*, arrestee handcuffed in back of guarded police cruiser), we do not understand him to chal-

lenge the great weight of authority which holds that *Belton's* bright-line rule applies even in cases where the arrestee is under physical restraint and at some distance from the automobile during the search. *See, e.g., United States v. Jackson*, 918 F.2d 236, 240 (1st Cir.1990) (arrestee handcuffed in police cruiser); *United States v.*

warrantless "contemporaneous" search incident to arrest, because the hatch area is more akin to an automobile trunk, which the *Belton* Court clearly differentiated from the "passenger compartment." Consequently, he insists, the trial court was required to conduct a *post hoc* analysis as to whether either vehicle occupant could have reached into the hatch area for a weapon or evidence.

■ Since Doward's arguments test the temporal and spatial limits of the bright-line rule announced in *Belton*, its context and rationale must be parsed exactingly at the outset. As a general rule, a lawful custodial *arrest* may be accompanied by a warrantless *search*—not only of the arrestee's "person" but the area within the arrestee's "*immediate control*"—for "any weapons that the [arrestee] might seek to use in order to resist arrest or effect his escape [and jeopardize] ... the officer's safety," as well as for "evidence on the arrestee's person [or in 'the area into which an arrestee might reach in order to grab a weapon or evidentiary items'] in order to prevent its concealment or destruction...." *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969) (invalidating, as overbroad, search of entire *residence* in which owner was arrested) (emphasis added). Some years later, in *Belton, supra*, the Court outlined the *scope* of the zone of "immediate control," *see Chimel*, 395 U.S. at 763, 89 S.Ct. at 2040, in the context of a warrantless security search of an automobile passenger compartment conducted as a contemporaneous incident of the arrests of all its occupants. *Belton* upheld a warrantless search of the entire "passenger compartment" against a claim that all its occupants were *outside* the vehicle at the time of the search—thus, as a practical matter, no longer within "reach" of any weapons, evidence or contraband located within the passenger compartment. *Belton*, 453 U.S. at 460, 101 S.Ct. at 2864.

Alluding to the difficulties encountered by lower courts in adapting—for application to arrest-related automobile searches—the "immediate control" concept announced in *Chimel*, the *Belton* Court's opinion stressed that its bright-line rule was designed to foster both privacy and law enforcement interests: "[T]he *protection* of the Fourth and Fourteenth Amendments '*can only be realized if* the police are acting under a *set of rules* which, *in most instances, makes it possible to reach a correct determination beforehand* as to whether an invasion of privacy is justified in the interest of law enforcement,'" *id.* at 458, 101 S.Ct. at 2863 (citation omitted) (emphasis added), especially since police officers engaged in an arrest on the highway have "only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." *Id.* at 458–59, 101 S.Ct. at 2863–64 (noting earlier Supreme Court cases rejecting the view that "there must be litigated in each case the issue of whether or not there was present one of the reasons supporting the authority for a search of the *person* incident to a lawful arrest") (citation omitted) (emphasis added).

■ The *Belton* Court explicitly predicated its bright-line rule on "the *generalization* that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, *even if not inevitably*, within 'the *area* into which an arrestee *might* reach in order to grab a weapon or evidentiary [item].'" *Id.* at 460, 101 S.Ct. at 2864 (quoting *Chimel*, 395 U.S. at 763, 89 S.Ct. at 2040) (emphasis added). Against this pragmatic framework the Court articulated its bright-line rule: "we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a *contemporaneous incident of that arrest*, search the passenger compartment of that automobile," and "examine the contents

*White*, 871 F.2d 41, 43 (6th Cir.1989) (in police cruiser); *United States v. Karlin*, 852 F.2d 968, 970–71 (7th Cir.1988) (handcuffed in police cruiser), *cert. denied*, 489 U.S. 1021, 109 S.Ct. 1142, 103 L.Ed.2d 202 (1989); *United States v. Cotton*, 751 F.2d 1146, 1148 (10th Cir.1985) (handcuffed); *United States v. Collins*, 668 F.2d 819, 821 (5th Cir.1982) (same); *see also Traylor v. State*, 458 A.2d 1170, 1174 (Del.1983) (outside car, handcuffed);

*State v. Wheaton*, 121 Idaho 404, 825 P.2d 501, 502–03 (1992) (handcuffed in police cruiser); *State v. Miskolczi*, 123 N.H. 626, 465 A.2d 919, 920–21 (1983) (same); *State v. Hensel*, 417 N.W.2d 849, 852–53 (N.D.1988) (same); *State v. Fladebo*, 113 Wash.2d 388, 779 P.2d 707, 711–12 (1989) (in cruiser); *cf. United States v. Vasey*, 834 F.2d 782, 787 (9th Cir.1987) (citing *United States v. Abel*, 707 F.2d 1013, 1015 n. 3 (9th Cir.1983)).

of any [open or closed] containers found within the passenger compartment. . . ." *Id.* (footnote omitted) (emphasis added).[2] Finally, the scope of the "passenger compartment" under the bright-line rule announced in *Belton* would not encompass the trunk. *Id.* at 460–61 n. 4, 101 S.Ct. at 2864–65 n. 4.

We think *Belton* leaves no doubt that *post hoc* analyses like those presently urged by Doward are precluded. The *Belton* majority's circumspect use of the discrete phrase "contemporaneous *incident* of that arrest," rather than the less expansive phrase "contemporaneous *with* that arrest"—as Doward would have us read it—plainly implies a greater temporal leeway between the custodial arrest and the search than Doward advocates. Moreover, the temporal limitation urged by Doward would undermine *Belton*'s bright-line rule by requiring courts to second-guess the security assessments made by law enforcement officers at the scene.[3]

Nor is the variant urged by Doward consonant with the bright-line rule as the Court articulated it. Nothing in the majority opinion even remotely implies that law enforcement officers must *discontinue* a passenger-compartment search—properly initiated as a contemporaneous *incident* of an occupant's arrest—the instant the arrestee is transport-ed from the scene. As must be the usual case in automobile-related arrests, Belton and the three passengers were no longer in the vehicle when the automobile search began. Although their location outside the vehicle virtually eliminated any chance that they could "reach" into the passenger compartment for any purpose, the Court conspicuously passed up the opportunity to limit its bright-line rule by requiring that the warrantless search cease once all occupants were removed from the passenger-compartment.[4] Instead, the *Belton* majority opted to relax *Chimel*'s *residence*-related arrest rationale in automobile-related arrests lest its fact-intensive inquiries immerse the courts in second-guessing security decisions made by law enforcement officers in rapidly evolving circumstances fraught with unpredictable risks to life and limb. *See, e.g., United States v. Karlin,* 852 F.2d 968, 971 (7th Cir.1988) (hindsight-based probability determinations would eviscerate *Belton* bright-line rule); *see also United States v. McCrady,* 774 F.2d 868, 871–72 (8th Cir.1985) (upholding search *initiated* after arrestee had left the scene).[5]

■ Doward further contends, in the alternative, that the hatch area was not subject to contemporaneous search under the bright-line rule announced in *Belton,* as it is more

---

**2.** The *Belton* bright-line rule likewise extends to *any* container within the passenger compartment even though its outward appearance might foreclose the possibility that it could hold a weapon or evidence: "The authority to search *the person* incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does *not depend* on what a court may later decide was the *probability* in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *Belton,* 453 U.S. at 461, 101 S.Ct. at 2864 (citing *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973)) (emphasis added).

**3.** We need not consider whether the time span between an automobile-related arrest and the *initiation* of a warrantless search of the passenger compartment might become so protracted as to raise judicial eyebrows in an exceptional case, *see, e.g., United States v. Vasey,* 834 F.2d 782, 787 (9th Cir.1987) (distinguishing invalid automobile search, occurring 30–45 minutes after arrest, from searches which "followed closely on the

heels of the arrest"), since this is anything but an exceptional case. The officers *initiated* the three-minute contemporaneous search immediately after Doward was placed under arrest, and completed it within *thirty seconds* after he was transported from the scene. *Compare United States v. Lugo,* 978 F.2d 631, 634 (10th Cir.1992) (invalidating search *initiated* after arrestee left scene) *with United States v. McCrady,* 774 F.2d 868, 871–72 (8th Cir.1985) (upholding search *initiated* after arrestee left scene).

**4.** Indeed, as the dissent noted, *see Belton,* 453 U.S. at 468, 101 S.Ct. at 2868 (Brennan, J., dissenting), "the result would presumably be the same even if [the police officer] had handcuffed Belton . . . in the patrol car. . . ." *See also supra* note 1.

**5.** Although such considerations are not determinative, the unpredictable developments ultimately confronting the officers in this case clearly vindicate the *Belton* rationale. The male passenger in the Ford Mustang remained in close proximity to the vehicle during the arrest and the ensuing search. Moreover, Doward's daughter, who also—unbeknownst to the officers—was sub-

akin to an automobile trunk, which *Belton* was careful to differentiate from the "passenger compartment." *See Belton,* 453 U.S. at 460–61 n. 4, 101 S.Ct. at 2864–65 n. 4. Consequently, he argues, the district court was required to determine whether any vehicle occupant could have reached into the hatch area while inside the Ford Mustang. And he asks this court to take judicial notice that the Ford Mustang hatchback he was driving had large interior dimensions which would make it impossible to reach into the hatch area from his position in the front seat.

■ We believe *Belton* unmistakably forecloses all such *post facto* inquiries on actual "reachability." As we have noted, the Court expressly predicated its bright-line rule on "the *generalization* that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, *even if not inevitably,* within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary [item].'" *Id.* at 461, 101 S.Ct. at 2864 (citation omitted) (emphasis added). Thus, the only question the trial court asks is whether the area searched is generally "reachable *without exiting the vehicle,* without regard to the likelihood in the particular case that such a reaching was possible." 3 Wayne R. Lafave, *Search and Seizure: A Treatise on the Fourth Amendment* § 7.1(c), at 16–17 (2d ed. 1987) (collecting cases) (emphasis added). The uncovered hatch area in this two-door Ford Mustang—unlike a trunk—generally is accessible from within the passenger compartment. Consequently, it is immaterial to the present analysis that the police elected to gain access by opening the outside lock on the hatch.

***The district court judgment is affirmed.***

---

ject to an outstanding arrest warrant, unexpectedly approached the officers from out of the gathering crowd. With only two officers available to search the vehicle and deal with this potentially dangerous situation, a decisional rule which would require judicial second-guessing of the need to continue the passenger-compartment search after Doward had been transported from the scene would eviscerate *Belton's* bright-line rule. Furthermore, the *Belton* rationale would be undermined were a temporal limit to be drawn, as Doward urges, *after* Officer Tareco's valid warrantless search of the first suitcase had disclosed the gun cleaning kit and ammunition, which afforded reasonable cause to believe that the passenger compartment would be found to contain a loaded firearm, a core concern undergirding both *Chimel* and *Belton.*