**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Jimmy D. GRAHAM, Defendant–Appellant.**

**No. 99CA2314.**

Colorado Court of Appeals, Div. I.

Sept. 27, 2001.

Rehearing Denied Jan. 31, 2002.

Certiorari Denied Sept. 9, 2002. *

* Justice MARTINEZ would grant as to the following issue:

Whether a vehicle search incident to arrest is lawful if the search is commenced once the arrestee has been transported away from the scene.

Ken Salazar, Attorney General, Miles Madorin, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, CO, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Jimmy D. Graham, appeals the judgment of conviction entered upon jury verdicts finding him guilty of possession with intent to distribute 25 to 450 grams of a schedule II controlled substance (methamphetamine), possession of less than an ounce of marijuana, possession of drug paraphernalia, and careless driving. We affirm the judgment of conviction for these offenses, but vacate defendant's convictions for possession of 25 to 450 grams of a schedule II controlled substance and simple possession of a schedule II controlled substance and remand for correction of the mittimus.

## I. Motion to Suppress

Defendant first argues that the trial court erred in denying his motion to suppress evidence obtained as the result of an allegedly unlawful search. We disagree.

Defendant was driving a tow truck and sideswiped a parked car. A police officer responded to the scene of the accident, contacted defendant, and ran a warrant check. The officer determined that there was a pending warrant for defendant's arrest issued in connection with a traffic case. Upon learning this, the officer called for assistance.

A second officer soon arrived at the scene. A few minutes later, the first officer verified that the warrant was still active and placed defendant under arrest by handcuffing him and putting him in the back seat of a patrol car. The two officers then agreed that the first officer would transport defendant to the police station, located only five blocks away, while the second officer searched the passenger compartment of the tow truck.

At the suppression hearing, the first officer testified that defendant was allowed to call a fellow employee to retrieve the tow truck. Both officers testified that, under the police department's written policy, an inventory search would be conducted, whether the vehicle was impounded or later picked up.

Just as the first officer began to drive the patrol car away from the scene with defendant in the back seat, the second officer opened the door to the tow truck and began his search. Within a few minutes, the second officer looked in the pocket of a jacket draped on the seat of the tow truck and discovered a vial containing a suspected controlled substance. The officer immediately suspended his search and locked the tow truck.

The officers obtained a warrant to search the tow truck and, during the execution of that warrant, discovered a small amount of

marijuana, various items of drug paraphernalia, and a large amount of methamphetamine.

In seeking to suppress this evidence, defendant challenged the warrant authorizing the search of the passenger compartment of the tow truck, alleging that it was obtained based on evidence illegally seized during the initial search.

The trial court denied defendant's suppression motion, ruling that the initial search of the passenger compartment of the tow truck was sufficiently contemporaneous to defendant's arrest such that it was a lawful search incident to arrest. The trial court did not determine whether the police had conducted a proper inventory search.

 When reviewing a trial court's suppression ruling, we must determine whether the trial court's factual findings are adequately supported by competent evidence in the record. If so, we will not disturb them. *People v. Gennings,* 808 P.2d 839 (Colo.1991). We must also determine whether the trial court applied the proper legal standard to the facts of the case. *People v. Jordan,* 891 P.2d 1010 (Colo.1995).

 Here, the parties do not dispute that there is ample record support for the trial court's factual findings. Thus, we turn directly to the dispositive question, apparently one of first impression in Colorado, of whether a vehicle search incident to arrest is lawful if the search is commenced as the arrestee is being transported away from the scene.

 The Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution proscribe unreasonable searches and seizures by state officials. Thus, warrantless searches are per se unreasonable unless they fall under a specifically established and well-delineated exception. One such exception is that when the police make a lawful custodial arrest of the occupant or recent occupant of an automobile, the police may conduct a contemporaneous search of the passenger compartment of that automobile. *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *People v. Savedra,* 907 P.2d 596 (Colo.1995).

The *Belton* standard was developed in response to the need for a workable, straightforward rule that police could apply in searching an automobile passenger compartment after making a custodial arrest of an occupant or recent occupant of that automobile. In setting out the rule, the Court noted that the police were confused about what parts of the automobile were in the actual reach of an arrestee under the [former] standard. Belton created a "bright line rule" defining the passenger compartment of an automobile as being within the hypothetical immediate control of an occupant or recent occupant of the vehicle. The passenger compartment is within the *Belton* zone even where the arrestee is away from the vehicle and safely within police custody at the time of the search.

*People v. Savedra, supra,* 907 P.2d at 598 & n. 1 (citations omitted). The *Savedra* court stressed that *Belton* applied to both occupants and recent occupants of vehicles. It noted that the temporal proximity between the police encounter and the defendant's presence in the vehicle is the main factor the court must consider in determining whether a person is a recent occupant of a vehicle under *Belton. People v. Savedra, supra,* at 599.

In *People v. H.J.,* 931 P.2d 1177 (Colo. 1997), the supreme court applied this search warrant exception where a passenger in a vehicle was arrested pursuant to an outstanding arrest warrant issued in connection with a traffic case. The passenger was in custody at the scene when the officer searched the vehicle. The supreme court concluded that the passenger's location at the time of the search was irrelevant, explaining that "[t]he authority to search the passenger compartment incident to arrest is automatic, and does not depend upon the specific facts of each case." *People v. H.J., supra,* 931 P.2d at 1183.

Likewise, in *People v. Daverin,* 967 P.2d 629 (Colo.1998), the court held that this exception applied where, at the time of the search, a passenger in the vehicle had been arrested on an outstanding warrant and was

handcuffed and seated in a patrol car at the scene.

Because the arrestees in *H.J.* and *Daverin* were both kept in custody at the scene while the passenger compartments of the vehicles were searched, the supreme court did not have to determine whether the continued presence of the arrestee at the scene of the vehicle search is a necessary element of the exception.

Other courts have confronted this question and have reached differing conclusions. For example, in *United States v. Lugo*, 978 F.2d 631, 634 (10th Cir.1992), the Tenth Circuit invalidated a vehicle passenger compartment search that was initiated after the arrestee was taken into custody and driven from the scene. The court concluded that *Belton* was inapplicable once the defendant was no longer present at the scene because "there was obviously no threat that he might reach in his vehicle and grab a weapon or destroy evidence. Thus, the rationale for a search incident to arrest had evaporated." *United States v. Lugo, supra,* 978 F.2d at 635.

■ Although we agree with this rationale of the *Lugo* court, we are compelled by the supreme court's opinions in *Savedra, H.J.,* and *Daverin,* discussed above, to conclude, as have other federal courts, that a vehicle search incident to arrest is lawful even if the search is commenced as the arrestee is being transported away from the area. Here, as in *Lugo,* there was no possibility that defendant could obtain a weapon or destroy evidence once he was in the police car, and thus, the very bases for a search incident to arrest appear not to have been present. Nevertheless, as noted, the supreme court cases have emphasized the importance of the temporal proximity between the police encounter and the defendant's presence in the vehicle, irrespective of the defendant's location at the time of the vehicle search.

Thus, in *United States v. Doward*, 41 F.3d 789 (1st Cir.1994), the court reasoned that the passenger compartment search exception was applicable where the arrestee was present in custody at the scene when the three-minute search began, even though he was then transported from the scene approximately thirty seconds before the search was concluded. The court explained its analysis of "the temporal and spatial limits of the bright-line rule announced in *Belton*" as follows:

> [T]he Belton Court's opinion stressed that its bright-line rule was designed to foster both privacy and law enforcement interests: "The protection of the Fourth and Fourteenth Amendments can only be realized if the police are acting under a set of rules which, in most instances, makes it possible to reach a correct determination beforehand as to whether an invasion of privacy is justified in the interest of law enforcement," especially since police officers engaged in an arrest on the highway have "only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront."

> The *Belton* Court explicitly predicated its bright-line rule on "the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within the area into which an arrestee might reach in order to grab a weapon or evidentiary [item]." Against this pragmatic framework the Court articulated its bright-line rule: "we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile," and "examine the contents of any [open or closed] containers found within the passenger compartment...."

> We think *Belton* leaves no doubt that post hoc analyses like those presently urged by Doward are precluded. The *Belton* majority's circumspect use of the discrete phrase "contemporaneous incident of that arrest," rather than the less expansive phrase "contemporaneous with that arrest"—as Doward would have us read it—plainly implies a greater temporal leeway between the custodial arrest and the search than Doward advocates. Moreover, the temporal limitation urged by Doward would undermine *Belton's* bright-line rule by requiring courts to second-guess the

security assessments made by law enforcement officers at the scene.

*Doward, supra,* 41 F.3d at 792–93 (citations, internal quotations, footnote, and emphasis omitted); see *United States v. McLaughlin,* 170 F.3d 889 (9th Cir.1999)(following *Doward* and concluding that a search of the passenger compartment of an automobile that commenced five minutes after the defendant has been arrested and removed from the scene qualified as a search incident to arrest under *Belton* ).

In our view, the approach outlined in *Doward* is persuasive and more consistent with the supreme court's pragmatic analysis in *People v. H.J., supra,* and *People v. Daverin, supra.* Accordingly, following *Doward* here, we uphold the trial court's denial of defendant's suppression motion based on its conclusion that the search of the passenger compartment of the tow truck was lawfully conducted as a contemporaneous incident of defendant's arrest, even though defendant was not present at the scene during most of the search. Because defendant was present when this search began and was only a short distance away from the scene of the search when it was concluded a few minutes later, the facts of this case do not require us to "consider whether the time span between an automobile-related arrest and the initiation of a warrantless search of the passenger compartment might become so protracted as to raise judicial eyebrows in an exceptional case." *Doward, supra,* 41 F.3d at 793 n. 3.

## II. Sequestration of Witnesses

Defendant next contends the trial court erred by denying his motion for a new trial based on an alleged violation of the court's witness sequestration order. We are not persuaded.

Matters relating to the sequestration of witnesses and violations of sequestration orders are within the trial court's sound discretion. Absent an abuse of discretion, the decision not to impose sanctions will be upheld. *People v. DeBoer,* 829 P.2d 447, 449 (Colo.App.1991).

Here, prior to trial, the court entered a sequestration order prohibiting the revelation of "testimony of witnesses who have testified to those who have not."

During trial, the defense called the manager of the tow truck company to testify primarily about who, other than defendant, had had access to the tow truck in the days prior to defendant's arrest. In direct examination, counsel asked the manager whether, immediately prior to testifying, he had spoken in the hallway with the detective who was serving as the prosecution's advisory witness. The manager stated that he and the detective had spoken about the manager's methamphetamine conviction.

After trial, defendant filed a motion for a new trial in which he alleged, as relevant here:

> The testimony of the defendant's witnesses was adversely affected by the prosecution and its advisory witness, [the detective]. Apparently, ... an investigator and father of the defendant ... heard [the detective] pressure [the manager of the tow truck company], a witness, about his testimony and suggested a greater jail sentence for his recent drug conviction, if he failed to cooperate with the prosecution. [The tow truck manager] is a convicted drug offender regarding [sic] methamphetamines.

The prosecution's response included an affidavit from the detective, stating that he had spoken with the manager about the manager's methamphetamine case pending in federal court and the substance of his anticipated testimony in this case. The detective stated that he did not pressure the manager regarding his testimony, though he admitted that he had told the manager that he might want to await a trial court ruling before divulging the factual circumstances of his federal case.

At the hearing on his motion for a new trial, defendant did not present any evidence to support his allegations. The trial court thus denied the motion, relying on the detective's affidavit and finding that his actions did not constitute a violation of the court's sequestration order because he had not divulged to the manager the substance of any other witness' testimony.

We perceive no abuse of discretion in the trial court's ruling. Although we view the

detective's actions as imprudent, there is no evidence in the record that he violated the sequestration order. Moreover, the record indicates that defendant did not raise the issue of the alleged violation during trial, even though he was then clearly aware of the conversation between the detective and the tow truck manager. Finally, we note that defendant failed to produce any evidence to support his post-trial allegations of coercion and resulting prejudice.

### III. Sentencing

■ Defendant contends the trial court misinterpreted the applicable felony sentencing provisions. We agree in part and vacate two of defendant's convictions.

The jury returned a verdict finding that defendant unlawfully possessed 25 to 450 grams of a schedule II controlled substance with intent to distribute. In two separate verdicts, the jury also found defendant guilty of possession of 25 to 450 grams of a schedule II controlled substance and simple possession of a schedule II controlled substance.

The trial court entered the following judgments and sentences to the Department of Corrections (DOC): (1) eight years for possession of 25 to 450 grams of a schedule II controlled substance with intent to distribute; (2) six years, to be served concurrently, for possession of 25 to 450 grams of a schedule II controlled substance; and (3) six years, to be served concurrently, for possession of a schedule II controlled substance.

On appeal, defendant contends, the People concede, and we agree that the trial court erred by entering a judgment of conviction and imposing a separate sentence upon a finding of a sentence limiting factor that the trial court misperceived as a separate substantive offense.

The controlled substances statute provides, in relevant part, as follows:

(1)(a) ... [I]t is unlawful for any person knowingly to ... possess, or to possess with intent to ... distribute a controlled substance....

(2) ... [A]ny person who violates any of the provisions of subsection (1) of this section:

(a) In the case of a controlled substance listed in schedule I or II of part 2 of this article, commits:

(I) A class 3 felony; except that a person commits a class 4 felony if such violation is based on the possession of a controlled substance listed in schedule II unless otherwise provided in paragraph (a) of subsection (3) of this section; ...

(3)(a) ... [A]ny person convicted pursuant to paragraph (a) of subsection (2) of this section for knowingly ... possessing, or possessing with intent to ... distribute ... an amount that is or has been represented to be:

(I) At least twenty-five grams or one ounce but less than four hundred fifty grams of any material, compound, mixture, or preparation that contains a schedule I or schedule II controlled substance ... shall be sentenced to the department of corrections for at least the minimum term of incarceration in the presumptive range provided for such offense in section 18–1–105(1)(a)....

Section 18–18–405, C.R.S.2001.

Under § 18–18–405, the jury's finding that defendant possessed 25 to 450 grams of a schedule II controlled substance is the basis for limiting the trial court's sentencing discretion; it is not the basis for a separate substantive conviction. *See People v. Salcedo*, 985 P.2d 7 (Colo.App.1998)(vacating the defendant's substantive conviction and sentence for possession of 28 grams or more of cocaine), rev'd—on other—grounds, 999 P.2d 833 (Colo.2000). Thus, the separate judgment of conviction for this "offense" must be vacated. However, the jury's finding regarding the amount possessed remains operative insofar as it relates to defendant's substantive conviction and the resulting limitation of the trial court's sentencing discretion.

Although defendant's separate convictions for possession of a schedule II controlled substance with intent to distribute and simple possession of a schedule II controlled substance could enter if they were based on different evidence, the People concede that defendant's convictions in this case were based on identical evidence. Thus, only one

conviction may enter. *See People v. Johnson*, 987 P.2d 855, 860–61 (Colo.App.1998).

In determining which conviction to vacate, we must seek to give maximum effect to the jury's resolution of the issues. *People v. Johnson, supra.* Therefore, we vacate defendant's conviction for simple possession and maintain his conviction for possession with intent to distribute because the latter is an extraordinary risk crime, as discussed below, with a greater upper end of the presumptive range supporting defendant's eight-year sentence.

Possession of a schedule II controlled substance with intent to distribute is a class three felony. Section 18–18–405(2)(a)(I), C.R.S.2001. Typically, the presumptive sentencing range for a class three felony is four to twelve years imprisonment. Section 18–1–105(1)(a)(V)(A), C.R.S.2001. However, because possession of a controlled substance with intent to distribute is an "extraordinary risk" crime, the maximum sentence in the presumptive range is increased to sixteen years. Section 18–1–105(9.7)(a), (b)(XI), C.R.S.2001. Where the amount possessed was 25 to 450 grams, the defendant must be sentenced to the minimum sentence in the presumptive range. Thus, the applicable sentencing range in this case is four to sixteen years.

The record establishes that the trial court correctly understood the applicable sentencing range and imposed a sentence within that range. Thus, there is no need for resentencing.

The judgment is vacated as to the convictions for possession of 25 to 450 grams of a schedule II controlled substance and simple possession of a schedule II controlled substance, and the case is remanded with directions to amend the mittimus to reflect a conviction for possession of a schedule II controlled substance with intent to distribute and a corresponding eight-year sentence to the custody of the DOC. In all other respects, the judgment is affirmed.

METZGER and NEY, JJ., concur.