

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-5-2006

# USA v. Morris

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1750

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

## Recommended Citation

"USA v. Morris" (2006). *2006 Decisions*. Paper 1153.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1153

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-1750
_____

UNITED STATES OF AMERICA

v.

GREGORY LYNN MORRIS,

Appellant

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

(D.C. No. 03-cr-00218)
District Judge:  The Honorable Arthur J. Schwab
_____

ARGUED: OCTOBER 20, 2005

BEFORE: SMITH, BECKER, and NYGAARD, <u>Circuit</u> <u>Judges</u>.

(Filed:    May 5, 2006)
_____

Gary B. Zimmerman, Esq. (ARGUED)
100 Ross Street, Suite 304
Pittsburgh, PA 15219-2013

Counsel for Appellant

Michael L. Ivory, AUSA (ARGUED)
Laura S. Irwin, AUSA
Office of United States Attorney
700 Grant Street, Suite 400
Pittsburgh, PA 15219
                    Counsel for Appellee

_____

OPINION OF THE COURT
_____

NYGAARD, Circuit Judge.

Gregory Lynn Morris appeals from an order denying his motion to suppress evidence

of cocaine and crack cocaine discovered during a warrantless search of his pickup truck

following his arrest for drunk driving. Because we conclude that the warrantless search of

the contents of his truck was permissible under the inventory search exception to the warrant

requirement, and that drugs found within a book bag were subject to the inevitable discovery

exception to the exclusionary rule, we will affirm.[1]

**I.**

Appeals alleging violations of the Fourth Amendment search and seizure

protections are heavily fact-oriented. This appeal is no exception. They begin on

---

[1] In 2004, a jury convicted Morris of possession with intent to distribute cocaine and crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), (b)(1)(B)(ii). He was subsequently sentenced to twenty years in prison.

December 14, 2002, just before midnight, when Wilkins Township Police Officer David Brokaw saw Morris driving his pickup truck erratically. He followed him for a distance before stopping him. Morris' truck and Brokaw's police car were blocking the right-hand traffic lane.

Brokaw's initial observations led him to believe that Morris was drunk. So he had Morris try to perform several field sobriety tests, which were also observed by Officer Robert Lehew who arrived on the scene shortly after Morris was pulled over. Morris failed these tests and a portable breathalyzer test administered by another officer, Harry Welsh.

Brokaw arrested Morris for driving under the influence, in violation of 75 PA. CONS. STAT. § 3731, and called for a tow truck to impound Morris' vehicle because its driver and sole occupant was in custody. Morris consented to a blood test. Brokaw immediately drove him to Forbes Regional Hospital. Brokaw testified that he did not wait for the inventory search to be completed or for the tow truck to arrive because he was aware that over time alcohol dissipates in the bloodstream and because he knew there were often long waits for blood to be drawn at the hospital's emergency room on a Saturday night. Brokaw left the scene with Morris in custody approximately 15 minutes after the initial traffic stop.

Because there was no one to take possession of Morris' truck, and it could not be left blocking a lane of traffic, the vehicle was impounded. Lehew then performed an inventory search of Morris' truck. The inventory took about 15 or 16 minutes. In the extended cab portion of Morris' truck, Lehew found a yellow and black book bag which he opened. Inside the book bag, he found several plastic bags containing white powder and chunky substances which, based on his experience, he believed were cocaine and crack cocaine. He detailed these items and all other property he discovered within the truck on the inventory report form in accordance with the written Wilkins Township Motor Vehicle Inventory Procedures.

## II.

### A.

The prosecution may demonstrate that evidence seized in a warrantless search is admissible by showing that it was uncovered pursuant to a routine inventory search. An inventory search conducted by the police before the vehicle is towed is lawful if the police have grounds for impounding or otherwise taking custody of the vehicle, and the search is conducted pursuant to standard police procedures aimed at protecting the owner's property and protecting the police from the owner's later accusations of theft, loss or damage. *See Illinois v. LaFayette*, 462 U.S. 640, 643-44; 103 S. Ct. 2605, 2608; 77 L. Ed. 2d 65, 69 (1983).

Because Morris' vehicle was blocking a lane of traffic, the officers had no choice but to impound and eventually remove it. *See South Dakota v. Opperman*, 428 U.S. 364, 368-69; 96 S. Ct. 3092, 3097; 49 L. Ed. 2d 1000, 1005 (1976) ("The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.") Once Morris' truck was in police custody, the officers were permitted to inventory the vehicle. *See id.* at 372; 96 S. Ct. at 3098-99.

Morris argues that the inventory search was unlawful because the officers conducting the search failed to follow explicitly the commands of the Wilkins Township Police Department's established Vehicle Inventory Policy. Section 8.14.13(c) states:

> The owner or operator of the vehicle **shall** be asked to remove, **if possible**, all valuables from the vehicle prior to impoundment. If such items cannot be removed, they **shall** be inventoried before the vehicle is removed, and the owner/ operator **shall** be requested to verify the completeness of the inventory by signature.

(Emphasis added.)

Morris argues that because of the use of the word "shall" in the Wilkins Township Police Department Motor Vehicle Inventory Procedures, the officers on the scene were unconditionally obligated to permit him to take possession of his book bag before impounding his vehicle and conducting the inventory search. However, "shall" is modified by the phrase "if possible." We read this text to require that an arrestee be given

possession of the valuable items in his or her vehicle before impoundment and inventory if the officers on the scene are able to do so.

This was not possible here. By the time the inventory procedure had begun, Morris had been arrested, handcuffed and was on his way to Forbes Regional Hospital, and could neither take possession of his valuables nor verify the completeness of the inventory with his signature. The District Court found that it was reasonable for Brokaw to transport Morris immediately to the hospital for a blood draw because alcohol quickly dissipates in the blood, and because there can be long waits at the hospital's emergency room. We agree. Moreover, under Pennsylvania law, police officers have only two hours following the arrest in which to obtain an arrestee's blood alcohol content. *See* 75 PA. CONS. STAT. § 3802(a)(2). It was unquestionably reasonable for the police to transport him quickly to the hospital to gather evidence for use in a future DUI prosecution.

The record supports the District Court's finding that the officers inventoried Morris' vehicle in accordance with the standardized method and policies found in Wilkins Township Police Department Motor Vehicle Inventory Procedures Sections 8.14.10 - 8.14.19 and lawfully discovered the contraband.

**B.**

We also note that even evidence that would ordinarily be excluded because the process by which it was discovered contravened Constitutional strictures may be admitted

if the evidence would have inevitably been discovered. "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received." *United States v. De Reyes,* 149 F.3d 192, 195 (3d Cir. 1998) (quoting *Nix v. Williams*, 467 U.S. 431, 444; 104 S. Ct. 2501, 2510; 81 L. Ed. 2d 377, 388 (1984)).

The officers in this case would have inevitably discovered the cocaine even if they had permitted Morris to take possession of his book bag – or valuables – before conducting an inventory search. It is undisputed that Morris' arrest was lawful. Before being given the book bag, it surely would have been searched incident to his arrest. *See New York v. Belton*, 453 U.S. 454, 460; 101 S. Ct. 2860, 2864; 69 L. Ed. 2d 768, 775 (1981), *reh'g denied*, 453 U.S. 950; 102 S. Ct. 26; 69 L. Ed. 2d 1036 (1981). Moreover, because the officers had already searched him and found a pocket knife, they were permitted to search all areas within his control where weapons could have been concealed and reachable by him. *See id.* at 460-61; 101 S. Ct. at 2864. Consequently, even if Morris had been given possession of his book bag, the officers would first have searched it for their own safety, and the cocaine inside would inevitably have been discovered.

## III.

The inventory search of Morris' truck was lawful, and Morris' cocaine would inevitably have been discovered.

The Judgment of the District Court will be affirmed.

_____

SMITH, *Circuit Judge*, concurring.

I concur in the judgment affirming the District Court's order denying Gregory Morris's motion to suppress the cocaine and crack cocaine. I write separately because even if the interpretation of the policy as articulated by Judge Nygaard in his opinion is wrong, as the dissent contends, the inventory search was not constitutionally infirm simply because the officers failed to comply with a requirement of the policy. Instead of the bright-line rule applied by the dissent - *i.e.*, if there is a violation of the policy, the search is unconstitutional - I submit that the better approach is set forth in *South Dakota v. Opperman*, 428 U.S. 364 (1976), and its progeny.

I.

In *Opperman*, 428 U.S. at 364, the Supreme Court considered the constitutionality of an inventory search of a vehicle. The Court acknowledged that inventory searches are performed "in response to three distinct needs: the protection of the owner's property while it remains in police custody; the protection [of] the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger." *Id.* at 369 (citations omitted). In deciding that these "caretaking procedures" were constitutionally permissible, the Supreme Court explained that the probable cause approach is unhelpful unless the "protective procedures are a subterfuge

for criminal investigations." *Id.* at 370 n.5.  Rather than focusing on whether there is probable cause to believe the defendant has committed a crime, the inquiry is whether, considering "all the facts and circumstances," the inventory search was reasonable under the Fourth Amendment. *Id.* at 375.  The Court declared that its decisions "point unmistakenly to the conclusion . . . that inventories pursuant to standard police procedures are reasonable." *Id.* at 372.

More than a decade later, in *Colorado v. Bertine*, 479 U.S. 367 (1987), the Supreme Court revisited the constitutionality of inventory searches.  In that case, the inventory search was conducted pursuant to a policy, but the policy allowed the officers to either conduct the inventory or remove the vehicle to an impound lot.  Bertine argued, *inter alia*, that the discretion afforded by the policy to inventory or impound rendered the search unconstitutional.  The Court rejected this argument.  It began its analysis by reiterating that "inventory searches are a well-defined exception to the warrant requirement of the Fourth Amendment." *Id.* at 371.  It highlighted *Opperman*'s finding that there were strong governmental interests behind the caretaking procedures, and observed that its "cases accorded deference to police caretaking procedures designed to secure and protect vehicles and their contents within police custody." *Id.* at 372 (citations

omitted). Consistent with this observation, the *Bertine* Court reasoned that the existence of an alternative to the inventory did not render the search constitutionally infirm, and concluded that "reasonable police regulations relating to inventory procedures *administered in good faith* satisfy the Fourth Amendment . . . ." *Id.* at 374 (emphasis added). In addition, the Court explained that the discretion to inventory or impound the vehicle did not invalidate the search. It declared that "[n]othing in *Opperman* or *Lafayette* prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Id.* at 375.

Thereafter, in *Florida v. Wells*, 495 U.S. 1 (1990), the Supreme Court considered whether an inventory search of an automobile and several closed containers therein was reasonable. The record did not reveal any evidence that a policy governed the search. Chief Justice Rehnquist reiterated that some discretion is permissible, *id.* at 4, and explained that "[o]ur view that standardized criteria or established routine must regulate the opening of containers is based on the principle that an inventory search must not be a ruse for general rummaging in order to discover incriminating evidence." *Id.* A search conducted in the absence of a policy, however, is constitutionally infirm. *Id.* at 5.

Thus, *Opperman* and its progeny instruct that the initial inquiry in reviewing the constitutionality of an inventory search is whether there is a policy that is sufficiently detailed that it limits the discretion of the officers conducting an inventory search and precludes such a search from being a subterfuge for investigating other crimes. *See Wells*, 495 U.S. at 5; *Bertine*, 479 U.S. at 372. Without a policy to guide the officers, the inventory search is unconstitutional. If the policy exists and satisfies the requirements of *Opperman* and its progeny, the next step is to determine if there was compliance with the policy.

Compliance with the policy for inventory searches ends the inquiry and there is no basis for suppressing evidence obtained from such an inventory search. But contrary to the dissent's approach, I submit that an inventory search is not constitutionally invalidated simply because the officers have not rigidly adhered to some term of the policy. It is my view rather, that if a deviation from the policy has occurred, the next step in the inquiry must be whether the officers conducting the search acted in good faith by attempting to comply with the policy and to accomplish the caretaking purpose of such inventory searches. *See Bertine*, 479 U.S. at 374 (concluding that "reasonable police regulations relating to inventory procedures *administered in good faith* satisfy the Fourth

Amendment . . . .") (emphasis added); *Opperman*, 428 U.S. at 369, 370 n.5, 376 (describing the reasons for inventory searches to be performed and pointing out that the caretaking procedures cannot be used as a means to investigate for evidence of other criminal activity").

As *Opperman* instructs, the inquiry "as in all Fourth Amendment cases," should "look to all the facts and circumstances of [the] case . . . ." 428 U.S. at 375. In cases such as the one we consider today, the court should determine whether the policy at issue failed to specify the procedure to be employed for the specific factual scenario presented in the case, such that the officers conducting the search can reasonably be excused from following one or more general rules of the policy.

## II.

Here, the policy at issue was detailed and appropriately limited the discretion of the officers in conducting the search. The policy explained that a "motor vehicle inventory is an administrative measure" designed to accomplish the caretaking purposes spelled out in *Opperman*. It instructed that a search "pursuant to a criminal investigation or with the intent of discovering evidence of a crime" is not covered by the policy and is not administrative in nature. The policy required that an inventory search be

conducted of any vehicle seized or impounded, and that such an inventory search should be conducted in the location at which the vehicle is seized. The owner/operator of the vehicle to be searched "shall be asked to remove" all valuables or "shall be requested to verify the completeness of the inventory by signature." The policy provided that the search "may extend to all areas of the vehicle in which personal property or hazardous material may reasonably be found . . . ." In addition, the policy instructed that "[a]ll closed containers found within the vehicle shall be opened . . . ." In the event a closed container was locked, the policy addressed how such containers were to be handled.

The officers arguably did not comply with one of the rules of the policy, however, because it required the owner/operator to either remove any contents or to verify the completeness of the inventory. Thus, we must consider whether the police officers conducted the search in good faith by attempting to comply with the policy insofar as the circumstances allowed, and whether they otherwise acted with the intent to fulfill the caretaking purpose of the policy. I conclude that they acted in good faith.

The policy at issue did not address the factual scenario presented to the officers, *i.e.*, how an inventory search was to be completed if the owner/operator was not available at the time the search was to be conducted and was unable to remove or to

verify the completeness of the inventory. In fact, if the vehicle had been removed without the inventory search being conducted at the roadside, the officers would have arguably violated the policy's requirement that the search should be conducted at the location where the vehicle is seized. Accordingly, the police officers complied with the policy to the extent that the circumstances would allow.

Further, other than the fact that Morris was not detained at the site to remove his property or verify the search, Morris did not identify any other deficiency in the officers' search of the truck. The officers' testimony indicated that the search was conducted for the purpose of inventorying the contents of the truck and that they did not anticipate that this arrest involved anything more than a driving under the influence offense. This evidence supports the District Court's finding that the search was not "conducted in bad faith or to investigate for evidence of crimes." This finding is not clearly erroneous.

Accordingly, I conclude that the inventory search, though arguably violative of one of the general terms of the policy, was not constitutionally infirm given the circumstances of this case. For that reason, I would concur in the judgment affirming

the District Court's order denying Morris's motion to suppress the drugs which were discovered during the inventory search of his truck.

Becker, *Circuit Judge*, dissenting.

I would hold that the search of Morris' vehicle was not a valid inventory search because police officers departed from their own written procedures. Furthermore, because the government did not raise the search incident to arrest and inevitable discovery arguments in the District Court, I would remand the case to allow the District Court to consider these arguments in the first instance and to develop the record further.

**I.        Inventory Search**

The majority concludes that Officer Lehew performed a valid inventory search under *South Dakota v. Opperman*, 428 U.S. 364 (1976), and its progeny because the search complied with standard police procedures. This conclusion, however, is based on a misreading of § 8.14.13(c) of the Wilkins Township Motor Vehicles Inventory Policy, quoted in the majority opinion.

The pivotal question is whether the phrase "if possible" in the first sentence of this provision modifies "remove" or "shall be asked." If, as the majority concludes, "if possible" modifies "shall be asked," then Lehew did not have to ask Morris to remove all valuables from his car. On the other hand, if "if possible" modifies "remove," then the phrase "shall be asked" is unqualified. Under this second reading, Wilkins Township police must *always* ask a suspect before removing objects from the car. It would follow that Lehew was not permitted to remove objects from Morris' car without asking him.

Under the last antecedent rule, "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas,* 540 U.S. 20, 26 (2003). "If possible" follows on the heels of "remove," and therefore modifies "remove" under the last antecedent rule of construction. Therefore, Lehew violated § 8.14.13(c).

This would be the better reading even if the first sentence of § 8.14.13(c) were read in isolation. But in fact the second sentence further supports the conclusion that "if possible" modifies "remove." That sentence explains what an officer should do in the event that it is *not possible* to remove an object. Such an explanation only makes sense if the first sentence is read as distinguishing between situations in which objects can and cannot be removed.

The police also violated § 8.14.13's requirement that the owner of the vehicle "verify the completeness of the inventory by signature." Officer Lehew admitted as much:

> Q. In this case, neither you, nor Brokaw, followed that policy, to have Morris verify by signature or refusal of signature, whichever it may have been? You didn't have that opportunity in violation of your policy?
>
> A. He was not on scene to be able to sign it; that's correct.
> . . .
>
> Q. Is there anything in your policy that provides to waive the signature or to deviate from your policy because a defendant is taken from the scene?
>
> A. No. There is nothing in our policy that states that.

Clearly, then, Lehew did not follow the Inventory Policy in that he did not ask

Morris to remove his valuables and did not ask Morris to verify the inventory by signature.

Where, as here, a formal, written policy does exist, and where officers violate

that policy, the inventory search is not restricted in the manner required by *Colorado v.*

*Bertine*, 479 U.S. 367 (1987).  In *United States v. Bridges*, 245 F. Supp. 2d 1034, 1037 (S.D.

Iowa 2003), the District Court held an inventory search invalid for failing to comply with

written procedures, even where an officer testified that it was "standard operating procedure

. . . to impound a vehicle for many unwritten reasons not contained in the policy."  *See also*

*United States v. Maple*, 348 F.3d 260, 263-65 (D.C. Cir. 2003) (invaliding an automobile

search where the police failed to follow their own procedures).  I therefore conclude that the

search cannot be upheld as a valid inventory search.[2]

---

[2.]The concurrence contends that we should first "determine whether the policy at issue
failed to specify the procedure to be employed for the specific factual scenario presented
in the case."  Concurring Op. at 4.  But the Inventory Policy does not cite *any* example of
specific factual circumstances in which the removal of valuables and signature
requirements apply.  Thus, if the requirements only apply where the policy "specif[ies]
the procedure to be employed for the specific factual scenario presented," then the
requirements would, quite literally, never apply.  Such a reading would nullify the
(continued...)

## II. Inevitable Discovery and Search Incident to Arrest

In the District Court, the government did not raise search incident to arrest or inevitable discovery arguments, and the District Court did not rule on these issues. However, the government now argues, and the majority concludes, that Morris' cocaine would have inevitably been discovered if the police had followed the Inventory Policy.

Under the inevitable discovery doctrine, "[i]t is the government's burden to show that the evidence at issue would have been acquired through lawful means." *United*

---

[2.](...continued)
Inventory Policy.

Rather than listing every conceivable factual circumstance, the Inventory Policy states a categorical rule. The owner "shall be asked to remove" valuables and he "shall be requested to verify the completeness of the inventory by signature." This mandatory language contains no exceptions and therefore applies in all circumstances.

To the extent that the concurrence suggests that we should consider the good faith of the officers even if they violated the Inventory Policy, I cannot agree. Where police violate their own procedures in circumstances such as these, courts invalidate the search without any inquiry into subjective motivations. As the D.C. Circuit stated, "the salient point is that *whatever his good intentions*, the officer failed to follow established police policy and procedures." *Maple*, 348 F.3d at 265 (emphasis added); *Bridges*, 245 F. Supp. 2d at 1037 (invalidating an inventory search for failure to follow procedures even though the "officer. . . may have been motivated solely by the reasons offered and not by the hope of finding evidence of illegal activity").

Permitting the police to violate their own policies would effectively replace judicial examination of written procedures, which *Bertine* requires, with an analysis of the subjective intent of individual officers. *See Bertine*, 479 U.S. at 374 n.6 ("Our decisions have always adhered to the requirement that inventories be conducted according to standardized criteria.") (citing *Illinois v. Lafayette*, 462 U.S. 640, 648 (1983); *Opperman*, 428 U.S. at 374-375). Applying Supreme Court doctrine, I would avoid questions of subjective intent by objectively focusing on compliance with a written policy.

*States v. Vasquez De Reyes*, 149 F.3d 192, 195 (3d Cir. 1998). Here, "lawful means" would require compliance with § 8.14.13(c), which mandates that police ask the suspect to remove valuables from the vehicle. It appears that Lehew could have complied with this requirement in two ways. First, he could have asked Morris to inventory the car before Morris was taken to the hospital. Second, Lehew could have decided not to conduct an inventory search. Section 8.14.6 of the Inventory Policy suggests that police are never required to conduct an inventory search: "<u>Legal Authority to Inventory</u>: An authorized member of this agency *may* conduct a motor vehicle inventory without a warrant or probable cause . . ." (emphasis added.)

The majority simply assumes that faced with this choice, Lehew would decide to conduct the inventory search with Morris present, even though this would delay taking Morris to the hospital for a blood-alcohol test. Given the officers' desire to take Morris to the hospital as soon as possible, I cannot view this decision as inevitable. In fact, Officer Brokaw testified that he was anxious to get Morris to the hospital before his blood-alcohol level began to drop.

While the Inventory Policy suggests that he could have chosen not to perform the inventory, Lehew's testimony complicates matters: "We have a policy saying when we have someone in custody, there is no other driver with the vehicle, we *have to* do an inventory report." (emphasis added.) If Lehew had no choice but to conduct an inventory,

then the only way to comply with the Inventory Policy would have been to inventory the car with Morris present, a process that would have led to the discovery of the drugs.

Because it is unclear from the record whether Lehew had discretion not to conduct an inventory search, and because application of the inevitable discovery doctrine turns on this determination, I would remand the case to the District Court for a determination whether the evidence would inevitably have been discovered.

In light of my disagreement with the majority, I must reach the government's final argument, that the police officers performed a valid search incident to arrest. I have serious doubts that the search incident to arrest exception to the warrant requirement, emanating from *New York v. Belton*, 453 U.S. 454, 460 (1981), should apply to this case, where Lehew searched Morris' car while Morris was en route to the hospital with Brokaw.

In *Belton*, which involved the search of an automobile after the suspects had exited the vehicle, the Supreme Court announced the following rule: "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." 453 U.S. at 460. The Courts of Appeals have extended *Belton* to great lengths, in some cases upholding searches that occur while the suspect is handcuffed, in a police

cruiser at the scene of the crime, or both.[3]  However, courts are divided on the precise issue in this case, whether a search incident to arrest is valid when, at the time of the search, police have transported the suspect away from the scene of the crime.

In *United States v. Lugo*, 978 F.2d 631, 635 (10th Cir. 1992), the Tenth Circuit held that a search is not contemporaneous with an arrest where the suspect has been transported from the scene of the crime.  The court explained:

> In this case, when the search of Lugo's truck began, Lugo was no longer at the scene. He was handcuffed and sitting in the back seat of a patrol car proceeding toward Green River. Once Lugo had been taken from the scene, there was obviously no threat that he might reach in his vehicle and grab a weapon or destroy evidence. Thus, the rationale for a search incident to arrest had evaporated. [The police officer's] inventory was not contemporaneous because it was remote in time and in place as regards Lugo and his truck being in entirely different locations, and no exigency existed.

*Id.* at 635.[4]

---

[3.] *See United States v. Doward*, 41 F.3d 789, 791 n.1 (1st Cir. 1994) (collecting cases).

[4.] The Tenth Circuit has repeatedly reaffirmed this holding. *See United States v. Edwards*, 242 F.3d 928, 937-38 (10th Cir. 2001) (holding that a search that occurred when the suspect was handcuffed in a police car, after being arrested 100-150 feet away from his vehicle, was not a valid search incident to arrest); *United States v. Dennison*, 410 F.3d 1203, 1209 (10th Cir. 2005); *United States v. Walker*, No. 00-1513, 2002 U.S. App.

(continued...)

In *United States v. McLaughlin*, 170 F.3d 889, 891-92 (9th Cir. 1999), the

Ninth Circuit reached the opposite conclusion, stressing that the *Belton* rule is categorical:

> Because it is a bright-line rule that may be invoked regardless of
> whether the arresting officer has an actual concern for safety or
> evidence, we have held that the applicability of the *Belton* rule
> does not depend upon a defendant's ability to grab items in a car
> but rather upon whether the search is roughly contemporaneous
> with the arrest.

The First Circuit decided a similar issue in *Doward*, where it upheld a search

that began while the suspect was on the premises but continued after he was transported

away. 41 F.3d at 791. The Court reasoned that *Belton* established a bright-line rule designed

to prevent courts from second guessing police officers' decisions. *Id*. at 792-93. The court

noted that although there was no real risk in *Belton* that suspects already outside the car

would be able to reach back into the passenger compartment, *Belton* still upheld the search.

*Id.* at 793.

Subsequent to *Doward, Lugo*, and *McLaughlin*, the Supreme Court decided

*Thornton v. United States*, 541 U.S. 615 (2004), which extends *Belton*, holding that police

---

[4.](...continued)
LEXIS 2707 (10th Cir. Feb 20, 2002).

may conduct a search incident to arrest of the passenger compartment, even when police make contact only after the suspect leaves the vehicle. In *Thornton*, the suspect was handcuffed and placed in the back of a police car, but, in contrast to this case, the police car had not left the scene of the arrest. *Id.* at 618. At all events, the question whether handcuffing the arrestee and placing him in the patrol car affected the applicability of the search incident to arrest doctrine was not within the Court's grant of *certiorari*. As the Court emphasized, "[t]he question presented—'[w]hether the bright-line rule announced in *New York v. Belton* is confined to situations in which the police initiate contact with the occupant of a vehicle while that person is in the vehicle,'—does not fairly encompass" such questions. *Id.* at 624 n.4 (citation omitted).

I am inclined to adopt the Tenth Circuit's approach and conclude that Lehew did not perform a valid search incident to arrest. Indeed, I have serious doubts that the search incident to arrest doctrine discussed in *Belton* and *Thornton* can be stretched so far as to encompass the present situation, in which the suspect has been carried away in handcuffs from the scene of the crime. However, since the issue was not dealt with in the District Court, I would remand the case to allow the District Court to address it in the first instance.

For these reasons, I respectfully dissent.